# Wood, Ex'rx, *v.* Brewer & Brewer.

### *Action on Account.*

| 73 | 259 |
| 93 | 446 |
| 73 | 259 |
| 94 | 336 |
| 73 | 259 |
| 126 | 388 |
| 73 | 259 |
| 131 | 366 |
| 131 | 442 |
| 73 | 259 |
| 132 | 90 |

1. *Competency of a party as a witness under section 3058 of the Code.* Under the statute rendering a party incompetent to testify as to any "transaction with, or statement by a deceased person," etc., testimony, to come within the first class mentioned, must relate to some act done by the deceased, or in the doing of which he personally participated; and to come within the other class mentioned, it must be of a conversation to which the deceased was a party, and in which his statements, replies, or presumed admission from silence are sought to be introduced in evidence; and in either case, to fall within the prohibition of the statute, the transaction or statement must be of such a character, and so connected with the deceased that, if living, the presumption would be that he could deny, qualify, or explain it.

2. *Same.*—If the testimony relate to a transaction with another, or falls not within the class supposed to be particularly within the knowledge of the deceased, neither the rule of exclusion, nor the reason of it applies; and hence, it was held that the testimony objected to in this case, as coming within the statute, was competent, and the primary court did not err in admitting it.

3. *Admissibility of evidence.*—In an action on an account for work and labor done for, and on the plantation of a deceased person, brought by a

[Wood, Ex'rx, v. Brewer & Brewer.]

transferee of the account, the fact that the transferor worked on the plantation, and the value of his services being shown by a witness, it is competent for the plaintiff to further prove by the witness that the latter worked on the plantation with the transferor, for the purpose of showing the witness' opportunities of knowing that the transferor did work on the plantation, and the value of the services rendered by him.

4. *Same.*—In such action, the plaintiff's case being presented in two aspects,—on an alleged contract made between the decedent and the transferor, and on an implied promise by the decedent to pay the transferor the value of the services rendered by the latter on the plantation of the former, with his knowledge and consent,—and the defense being, that if such services were performed, they were performed at the instance and request of another, who had charge and possession of the plantation, and was cultivating it, as lessee of the decedent, it is competent for the witness to testify, at the plaintiff's instance, that he worked on the plantation the same year when the alleged services were performed by the transferor, under the employment of the decedent, and that the latter paid him for his services, as an act of control or proprietorship, furnishing some evidence that the crop on the plantation was being made on the decedent's account.

5. *Contract by an agent; when imposes a liability on him.*—An agent who contracts in his own name, without disclosing that he is acting for a principal, incurs a personal liability, which is primary in its character.

APPEAL from Macon Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This was an action by Brewer & Brewer, transferees of one Graham, against Martha Wood as the executrix of the last will and testament of R. H. Wood, deceased, and was founded on account for work and labor done by Graham for the defendant's testator during the year 1875. The defendant pleaded in short by consent, (1) the general issue; and (2) "the statute of frauds as to a promise to pay the debt of another;" and upon issues joined on these pleas the cause was tried, the trial resulting in a verdict and judgment for the plaintiffs, from which the defendant appealed.

Graham, the transferor, was examined as a witness for the plaintiffs, "and was asked the following questions, and made answers thereto as follows: Ques. Where did you live in 1875? Ans. I lived on the plantation of R. H. Wood, the decedent. Ques. When did you go there? Ans. I went there in March of that year. Ques. How long did you stay there? Ans. I stayed there from March until about two weeks before Christmas." The defendant objected to each of the questions and to each of the answers, on the ground that the questions and answers related to and involved a transaction with her testator, and the witness was incompetent to testify in reference thereto. The court overruled each of the objections, and the defendant duly excepted. The plaintiff also examined as a witness one Mounce, who testified that he had seen Graham working on the place several times during the year 1875, that he worked on said plantation a portion of the time during that year, that he

was employed by defendant's testator for that purpose, and that said testator paid him for his services. He also testified to the value of Graham's services. Objections were made to portions of this witness' testimony, which were overruled by the court, and exceptions reserved by the defendant. The portions of his testimony so objected to are sufficiently indicated in the opinion. The plaintiff also introduced evidence, tending to show that, in March, 1875, Graham was in jail, and defendant's testator became his bail, and took him out of jail for the purpose of having him work on his plantation.

The evidence for the defendant tended to show that Julius Hall rented the testator's plantation and stock for the year 1875; that Hall was to furnish the labor, supplies and stock to make a crop, and that he was to give said testator a certain part of the crop raised on the place, as rent; that Graham sent for said testator to take him out of jail, so that he could work on said plantation for Hall, sending him word that he had seen Hall and made arrangements with him to work for him; that defendant's testator did not become Graham's bail for "a day or two" after Graham requested him to do so; and that said testator told Graham, after he had been released from jail, to go and make his arrangements with Hall. After the defendant closed, the plaintiffs recalled Graham, and asked him the following questions, to which he made the following answers: Ques. "Did you ever contract with Julius Hall to work for him for the year 1875?" Ans. "I did not." Ques. "Was there any agreement or understanding between you and Julius Hall, by which he was to pay you for your services?" Ans. "There was no such agreement or understanding." To each question and answer the defendant objected on the ground that the matters inquired about and elicited by the answers related to, and involved transactions with her testator, and, therefore, the witness was incompetent to testify in reference thereto. The court overruled the several objections; and the defendant duly excepted.

The court charged the jury, at the plaintiffs' request, as follows: That if they "believe from the evidence that the defendant's testator employed Graham, although he might have been acting for another, yet, if he did not disclose that fact to Graham, and the latter performed the services, he had a right to look to said testator for payment." The court also gave to the jury another charge at the plaintiffs' request, embodying substantially the same instructions as are contained in the charge copied above. To these charges the defendant duly excepted, and also to the refusal of the court to give the following charge requested by her in writing: "That the evidence of the witness Mounce, as to his being hired by Wood, and paid by

Wood for his services on Wood's place during the year 1875, can not be looked to as a circumstance to show a contract between Wood and Graham."

J. A. BILBRO and W. F. FOSTER, for appellant.

ABERCROMBIE & GRAHAM, and W. C. McIVER, contra.

STONE, J.—What are to be considered transactions with, or statements by deceased persons, under section 3058 of the Code of 1876, is a question which very frequently comes before us. To come within the former class, it must be some act done by the deceased, or in the doing of which he personally participated. To be within the latter class, there must have been a conversation to which he was a party, in which his statements, replies, or presumed admission from silence are sought to be introduced in evidence. In each case, to fall within the prohibited line, the transaction or statement must be of such a character, and so connected with the deceased, as that, if living, the presumption would be he could deny, qualify, or explain it. This is the sense of the rule. The legislature, by it, intended to deny to living suitors the advantage they would otherwise have over the estates of deceased adversaries, if permitted to testify to transactions with, and statements by such adversaries, after death had rendered it impossible that such adversaries could be heard in reply. If the testimony relate to a transaction with another, or fall not within the class supposed to be particularly within the knowledge of the deceased, neither the rule of exclusion, nor the reason of it applies.—McCrary v. Rash, 60 Ala. 374; Tisdale v. Maxwell, 58 Ala. 40; Boykin v. Smith, 65 Ala. 294; Killen v. Lide, Ib. 505. None of the testimony of the witness Graham, given on his first or last examination, related to any transaction with, or statement by defendant's testator, and the circuit court did not err in receiving it.

There was no error in allowing the witness Mounce to testify that he worked on Wood's plantation with Graham. It was very proper he should be allowed to so testify, for it tended to show the witness' knowledge of the matters he testified about. It certainly gave the witness better opportunities of knowing that Graham labored on the place, and the value of his services. It was proper for the jury to know this, for it tended to strengthen his testimony.

Against the objection of defendant, the witness Mounce was allowed to testify, that when he worked on testator's plantation (the same year when the alleged services of Graham were performed, for which this suit is brought), Wood, defendant's testator, employed him, and paid him for his services. The

[Tutwiler v. Montgomery.]

present suit is for work and labor alleged to have been done and performed by Graham at the request of Wood. The defense is, that if such service was performed, it was at the instance and request of Hall, and not of Wood. As we said when this case was before in this court—66 Ala. 570—the plaintiffs' claim is presented in two aspects; on an alleged express contract made between Wood and Graham, and on an implied promise by Wood to pay Graham the value of services rendered by the latter on the plantation of the former, with his knowledge and consent. Whether the law would imply such promise on the part of Wood, would depend largely on the further inquiry, on whose account, and under whose control was the plantation cultivated that year. For the law implies a promise to pay for services and work rendered, only against him who is benefited by such labor. Testimony was given for defendant that Wood's plantation was leased that year to Hall, who was to control the place, hire the labor, and pay rent to Wood for the use of his lands and stock. There was also testimony tending to show that Wood had said he wanted some hands on his plantation that year. The inquiry was thus raised, who had the control and direction of the place during that year—Wood or Hall. Now, as an independent proposition, the fact that Wood hired Mounce to labor on the place, and paid him for his labor, was not legal evidence to prove he also hired Graham, and agreed to pay him. It was, however, if believed, an act of control—of proprietorship—which furnished some evidence that the crop was being made on Wood's account. Why employ and pay for labor to work in the crop, if that crop, when matured, was to be Hall's? The circuit court did not err in admitting this evidence.

There is no error in the charges given. An agent who contracts in his own name, without disclosing that he is acting for a principal, incurs a personal liability, which is primary in its character.—1 Brick. Dig. 66, §§ 210, 214. The charge asked was properly refused, under the principles declared above.

Affirmed.