# Miller, Adm'r., *v.* Cannon & Co.

*Action of Detinue for a Mule.*

1. *Evidence; competency; conversation with deceased.*—An administrator brought detinue for a mule, introducing evidence of a conversation between his intestate and one E. that the mule was sold conditionally by his intestate to E., from whom defendant derived title. *Held*, that E. was not a competent witness to deny the conversation. (Code of 1886, § 2765).

2. The cases, *Cousins v. Jackson*, 52 Ala. 262, *Wood v. Brewer*, 73 Ala. 259; *Dismukes v. Tolsen*, 67 Ala. 368, discussed and criticised and reconciled with *Tisdale v. Maxwell*, 58 Ala. 40, and *Killen v. Lide*, 65 Ala. 605.

APPEAL from Wilcox Circuit Court.

Tried before the Hon. JOHN MOORE.

The action was brought by appellant, as administrator, for a mule, which appellant claimed was sold by his intestate conditionally to one Edwards, who mortgaged the mule to appellees. Appellees took possession thereof under the power in the mortgage for Edwards' debt.

[Miller, Adm'r., v. Cannon & Co.]

J. N. MILLER, for appellant, cited 65 Ala. 505; 58 Ala. 463; 50 Ala. 470.

. R. GAILLARD, *contra.*

STONE, C. J.—There appears to be some misapprehension, or confusion, in the interpretation of our various rulings on § 3058, Code of 1876; § 2765, Code of 1886. Possibly some of our unguarded expressions have contributed to this confusion. We propose in this opinion to attempt an explanation and reconciliation of the various rulings, and to declare what we conceive to be the true interpretation of the statute.

The case of *Cousins v. Jackson*, 52 Ala. 262, was as follows: B. T. Cousins recovered a judgment or decree against Morris Cousins, as administrator. Jackson was one of the sureties on his administration bond. Morris Cousins died, and McCain was appointed his administrator. B. T. Cousins sued Jackson, surety of Morris Cousins, to recover the amount of his said decree. On the trial, McCain, the administrator, testified to a conversation he claimed to have had with B. T. Cousins after the death of Morris, tending to prove that B. T. admitted the decree had been settled. B. T. Cousins was examined in rebuttal. He testified, first, contradicting to some extent, and explaining the alleged conversation with McCain.

He further testified that he had two interviews with McCain, and that the alleged conversation between them took place at the second of the interviews. He was asked by his counsel, "what reply he made to these statements of McCain, for the purpose of contradicting McCain as to what he said was plaintiff's reply." He was further asked, "What settlement had ever taken place between him and Morris Cousins since the rendition of said decree, in which said decree was embraced." This last question does not appear to have been objected to. The witness answered there had been none. He was then asked, "If any settlement had been had between him and Morris Cousins since the rendition of said decree, embracing other matters than said decree." This question was objected to, and the witness was not allowed to answer it.

It is manifest that the witness ought to have been allowed to answer the question first above stated. It was clearly legal, for it related to a conversation, not with the deceased, but with his administrator. His testimony, as asked for, did

[Miller, Adm'r,, v. Cannon & Co.]

not relate to a transaction with the deceased, *as a transaction*, but to a conversation he had had with a living witness, proved as an admission against him, by a living witness. He was asked to speak of the conversation, and not of the transaction, except to the extent the alleged conversation related to it.

BRICKELL, C. J., in his opinion, considered the questions together, and treated them as simply explaining and rebutting the alleged admission proved against plaintiff. The following are extracts from the opinion: "It (the testimony offered) had a tendency to explain the admission proved to have been made by appellant—to show that it referred to settlements in which the decree was not included. Or, it may have tended to show that if the appellant made the admission, as understood and repeated by the witness, the admission was not itself deliberately made, and was unfounded in fact. It also·tended to contradict the witness proving the admission, by showing the admission was untrue in point of fact, and could not have been made by the appellant. . . .
. . . . The point of controversy is: was that admission made, or if made, was it founded in fact, or in mistake? The admission certainly refers to a transaction with a deceased person, but that transaction is material only, in determining whether the admission was made, or if made, to enable the jury to give it proper application. . . . . . . The evidence of appellant was not intended to prove such settlements as independent facts, disconnected from the admission. The settlements were material only so far as they enabled the jury to·determine whether the appellant had made the admission to him—or if he made it, whether it was founded in fact, or in mistake—or to determine whether the admission he made did not refer to settlements in which the decree was not included."

Construed as C. J. BRICKELL construed the questions propounded, it may be that the ruling in that case was free from error. It would seem, however, that the rule he declared when applied to the question, "if any settlement had been made between him and Morris Cousins since the rendition of said decree, embracing other matters than said decree," can not be harmonized with the later rulings in *Tisdale v. Maxwell*, 58 Ala. 40, and *Killen v. Lide*, 65 Ala. 505.

In *Wood v. Brewer*, 73 Ala. 259, the question arose as follows: Wood owned a plantation, and Hall was either his tenant in possession, controlling the place as such, or he was

Wood's superintendent, in control of it. Wood had died before the suit was brought, and the suit was against his administrator. Graham had worked on the place as a laborer, and had transferred his claim for wages to Brewer, who sued for its recovery. There was controversy as to any express contract, or promise to pay Graham for his services, but both Wood and Hall knew of their being rendered, and no dissent by either was shown. The most important issue of fact that arose on the trial, was whether Wood or Hall should pay for Graham's services; whether the one or the other had employed him to labor. Proof was made by defendant tending to show that Graham, before he entered upon the service, had said "he had seen Hall, and made arrangement with him to work for him." Graham was examined as a witness for plaintiff, and was permitted to testify to the following statements of fact: "I lived on the plantation of R. H. Wood, the decedent, in 1875. . . . I went there in March of that year. . . . I stayed there from March until about two weeks before Christmas. . . . I did not make any contract with Julius Hall to work for him for 1875. . . . There was no agreement or understanding between me and Julius Hall, by which he was to pay me for my services." There were objection and exception to each of these separate sentences as they were permitted to be given in evidence. We held, there was no error in these rulings.

It is clear, no part of this testimony came within the letter of the statute. He did not testify to any transaction with, or statement by Wood, the decedent. Nor was any part of the testimony of that character, that either the law, or common experience would suggest would be within the knowledge of Wood, and about which he, more than another, could testify. As to the service on Wood's plantation, Hall, or any other person familiar with the place, could speak of that as intelligently as Wood could. And as to what he testified in regard to not making a contract with Hall, Hall was the witness who could controvert, or explain that; and he was not shown to be dead. This case was neither within the letter nor spirit of the statute, nor is it opposed to the principle declared in *Killen v. Lide*, 65 Ala. 505.

The statute (Code of 1886, § 2765), while relieving parties and persons of disability to testify in civil suits on account of interest, contains an exception "that neither party shall be allowed to testify against the other as to any trans-

[Miller, Adm'r., v. Cannon & Co.]

action with, or statement by a deceased person, whose estate is interested in the result of the suit or proceeding." In *Boykin v. Smith*, 65 Ala. 294, we said: "The policy of the exception is the exclusion of the parties in interest from testifying to transactions with, or statements by a deceased person, when the purpose of the evidence is to diminish the rights of the deceased, or of those claiming in succession to him. . . . . If death has sealed the lips of one party, the law intends, as to this species of evidence, to seal the lips of the living." In *Dismukes v. Tolsen*, 67 Ala. 386, we said: "Its purpose and policy are to exclude the living from testifying against the dead, because the latter can not be heard in explanation or contradiction." In *Wood v. Brewer*, 73 Ala. 259, the language employed is, that "to fall within the prohibited line, the transaction or statement must be of such a character, and so connected with the deceased, as that if living, the presumption would be that he could deny, qualify or explain it. This is the sense of the rule. The legislature, by it, intended to deny to living suitors the advantage they would otherwise have over the estates of deceased adversaries, if permitted to testify to transactions with, and statements by such adversaries, after death had rendered it impossible that such adversaries could be heard in reply. If the testimony relate to a transaction with another, or fall not within the class supposed to be particularly within the knowledge of the deceased, neither the rule of exclusion nor the reason of it applies." The foregoing extracts show the reason of the rule, and the extent of it.

We think our former interpretations of the statute we are construing, considered collectively, have established the following propositions: When the case falls expressly within either of the exceptions for which the statute makes provision, neither a party to the record, nor any one else having a vested pecuniary interest in the result of the suit, can testify against the estate of a deceased party, first as to (that is, directly relating to), any transaction with, or statement by the deceased, involved in the issue on trial. Second, that testimony whose direct office and purpose are to corroborate or weaken, strengthen or rebut, other evidence given of such transaction with, or statement by decedent, is equally within the reason and spirit of the prohibition.—*Tisdale v. Maxwell*, 58 Ala. 40; *McCrary v. Rush*, 60 Ala. 374; *Ala. G. L. Ins. Co. v. Sledge*, 62 Ala. 566; *Boykin v. Smith*, 65 Ala. 294; *Killen v. Lide*, Ib. 505; *Dismukes v. Tolsen*, 67 Ala. 386; *Goodlet v. Kelly*, 74 Ala. 213.

[Bell v. Bell.]

When, however, the testimony does not relate directly to, nor shed any direct light on some transaction with, or statement by the deceased adversary, then the prohibition does not apply. Hence, such witness may testify to pertinent collateral facts and transactions, not falling directly within the expressly prohibited class, although the effect may be to materially change the aspect of the case, and impair the probative force of the testimony.—*Wood v. Brewer*, 73 Ala. 259, falls within this class.

In this case, the plaintiff, who sues as administrator, having proved by a witness a conversation respecting the mule in controversy between plaintiff's intestate and Edwards from whom defendant derived title, the defendant introduced Edwards, who was allowed to testify that no such conversation ever occurred with the deceased. Under the rules declared above, the court erred in admitting this evidence.

There is nothing in the other errors assigned.

Reversed and remanded.