# Mobile Savings Bank *v.* McDonnell.

*Bill in Equity by Creditor to set aside Mortgage, or Deed of Trust, as Fraudulent.*

1. *Competency of party as witness.*—At common law, a party to the record was not a competent witness in the cause, except in certain cases, while, under statutory provisions (Code, § 2765), he is rendered a competent witness generally, but is not allowed to testify as to any transaction with a deceased person whose estate is interested in the result of the suit, or who acted in that transaction in a fiduciary capacity; and the courts will not engraft the common-law exceptions on the statutory provisions, where they are repugnant to the obvious policy of the statute.

2. *Testimony of party as to transaction with deceased agent.*—In a suit by a creditor seeking to set aside, as fraudulent, a mortgage or deed of trust executed by his insolvent debtor to an incorporated bank, the debtor himself being a party to the suit, he can not be allowed (Code, § 2765) to testify as a witness that the conveyance was withheld from record, by agreement between him and the bank cashier, since deceased, lest it might injure his credit; and the fact that a decree *pro confesso* has been entered against him, does not remove his statutory incompetency.

3. *Unrecorded mortgage; validity as against creditors.*—An unrecorded mortgage, which, after several renewals, is at last recorded within the time allowed by the statute (Code, §§ 1810-11), is not void as against simple-contract creditors, whose debts were incurred in the meantime, unless it was withheld from record for the fraudulent purpose of upholding the credit of the debtor, or is otherwise impeached by proof of actual or positive fraud on the part of the mortgagee; and under the facts of this case (the *bona fides* of the secured debt being admitted, the mortgage conveying not more than one third of the debtor's property, the law-day not being postponed for an unreasonable time, and it not being shown that the mortgagee had notice of the debtor's insolvency), the charge of fraud in fact is not sustained.

Vol. LXXXVII.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 17th October, 1887, by the executors of the last will and testament of James McDonnell, deceased, against the Mobile Savings Bank, W. J. Hearin as trustee, and Peter Burke and his wife; and sought to set aside on the ground of fraud, actual and constructive, a deed of trust executed by said Burke and wife to Hearin as trustee, to secure a debt of about $14,000 due to said bank. The deed of trust was executed on the 15th June, 1885, and was filed for record on the 27th July next afterwards; but the secured debt had been renewed several times, commencing in September, 1884, and a new mortgage executed on each renewal, and none of these mortgages were ever recorded. The bill alleged that Burke, at the time these transactions commenced, seemed to be doing a large and prosperous business, and was reputed to be a wealthy man, though he was in fact financially embarrassed, if not insolvent, and owed the bank nearly $100,000; that the bank, ascertaining his condition, determined to reduce his indebtedness, and not to extend further credit without security, but, knowing that publicity of the facts "would destroy his credit, render him unable to meet his liabilities, and thereby sacrifice said indebtedness to the bank, concealed said indebtedness from the public, and' thereby enabled him to obtain the indorsements of a number of his friends, upon paper which was afterwards, by pre-arrangement between him and said bank, given to it as security for part of said indebtedness; that said indorsements could not have been obtained, as said bank well knew, if the extent of Burke's indebtedness to it, and the evidence of said mortgages, or deeds of trust, after mentioned, had been known; . . that the purpose of allowing him to continue his business and to maintain his credit was to enable him to raise money and get security from other people, with which to reduce or secure the debt to said bank, and it was agreed and understood between him and said bank that said mortgage, or deed of trust, should not be recorded, but, for the purposes aforesaid, should be kept secret from the world;" that with a knowledge of the statutory provisions regulating the time within which mortgages were required to be recorded, "and for the purpose of protecting said property against judgment creditors and purchasers for value, and at the same time keeping the existence of said instrument a secret from the public, and there-

47

by maintaining the credit of said Burke; said Hearin, said bank and said Burke had an agreement and understanding between themselves, that said mortgage should not be recorded, but should be renewed every thirty or sixty days thereafter, or at some other frequent periods, until said Burke should pay off his said indebtedness, or until some complication in his affairs should necessitate the making public of said transaction;" and that said Burke executed a general assignment for the benifit of his creditors on Saturday, July 25th, 1885, two days before the last deed of trust was filed for record.

A joint answer was filed by the bank and Hearin, in which they stated the history of the various transactions between the bank and Burke, as shown by the books of the bank, whereby his indebtedness was reduced from $75,000 to $15,000; stated that these transactions were all conducted, on the part of the bank, by Thomas Henry, then president, and J. B. McMillan, cashier, both since deceased; denied that the bank had any notice of Burke's embarrassed condition; denied any fraud or concealment on the part of the bank, or any agreement or understanding that the deeds of trust should be withheld from record for the purpose of upholding Burke's credit, and insisted on the *bona fides* and validity of the deed of trust and the secured debt.

A decree *pro confesso* was entered against Burke, and his deposition was afterwards taken by the complainants. In reference to the first mortgage given to the bank, and its renewal from time to time, by agreement between himself and said McMillan, then cashier of the bank, Burke thus testified: "At first I objected to giving the mortgage, on the ground that it would affect my credit, and break up my business. He promised me most faithfully that no one would know anything about it, except himself and Major Hearin, who would be the trustee of the property, and that the same would not be put upon the record. I gave the mortgage on these conditions. It was agreed that the note and mortgage should be extended, from time to time as it fell due, for either thirty, sixty, or ninety days, as it should be convenient for me to pay the interest; except that I could not extend beyond ninety days at a time, because that was the limit for mortgages to be put upon record." The bank moved to suppress this part of the testimony of the witness, and other portions in which he referred to the agreement between himself and McMillan, because McMillan was dead, and had

acted in the matter in a fiduciary capacity for the bank. The chancellor overruled the objections to the testimony of the witness, on the ground that he would be competent at common law, and that the statute was intended to enlarge rather than restrict the competency of witnesses; and on final hearing, on pleadings and proof, he rendered a decree for the complainants, holding the mortgage fraudulent and void. The defendants appeal, and assign this decree as error, with the overruling of their objections to the testimony of Burke.

T. A. HAMILTON, and OVERALL & BESTOR, for appellant.

GREG. L. & H. T. SMITH, contra.

SOMERVILLE, J.—The present bill is filed by the executors of James McDonnell, deceased, to set aside as fraudulent a deed of trust executed by Peter Burke on June 15th, 1885, to W. J. Hearin, as trustee for the Mobile Savings Bank, to secure a promissory note made by Burke and wife, of even date with the conveyance, for the sum of fourteen thousand dollars, and payable thirty days after date. This conveyance was a renewal of a series of prior mortgages on the same property, the first of which was executed on September 30th, 1884, to secure a debt of fifteen thousand dollars due by Burke to the Bank; and the others, four in number, being executed at various dates afterwards, extending to, and including the one in controversy. These conveyances were withheld from the record, none of them being registered except the last; and this was recorded on July 27th, 1887, on the day after Burke made a general assignment of his property to his creditors.

The question which we first consider is the admissibility of that portion of Burke's testimony which relates to the execution of the mortgage, and the alleged agreement between himself and the Bank that the instrument was to be withheld from the record, and·its existence kept a secret, for the purpose of enabling Burke to maintain his credit with the public. Burke is a party defendant to the record in this case, and was introduced as a witness by the complainants, not by the Mobile Savings Bank, itself also a defendant to the suit. The transaction as to which he testified occurred between him and one McMillan, now deceased, who was then acting as cashier of the Bank, a relation of agency which was unquestionably of a fiduciary character.

We are clearly of opinion that Burke was not a competent witness as to this transaction, and that the chancellor erred in not excluding his testimony, so far as objected to by the appellant. He falls directly under the ban of the statute, both in letter and spirit, as declared in section 2765 of the present Code (1886). That section is to be construed in the light of the common-law rule, that all persons who were *parties* to the record, or had a pecuniary interest in the result of the suit, were incompetent to testify.—Stephen on Ev., Art. 107. The statute enlarges, to some extent, the former rule of competency, or, what is the same thing, narrows the old rule of exclusion; but it "preserves the common-law rule as to the class of excepted cases," at least where the proposed evidence does not violate the manifest policy of the statute.—*Dudley v. Steele*, 71 Ala. 423. It is substantially declared that, in civil suits, or proceedings, the common-law rule shall be abolished, which excluded a witness from testifying because he was a party to the record, or interested in the issue tried; and that hereafter, generally, both parties and interested persons shall be competent witnesses, except in certain cases. This exception provides, that "neither *party* shall be allowed to testify against the other, as to any transaction with, or statement by any deceased person, whose estate is interested in the result of the suit or proceeding, or when such *deceased person*, at the time of such transaction or statement, acted in any *representative or fiduciary relation* whatever to the party against whom such testimony is sought to be introduced, unless called to testify thereto by the opposite party."—Code, 1886, § 2765.

We repeat, by way of lending emphasis to the fact, that, as to the class of statutory exceptions, the common-law rule is preserved, and not abrogated, and that rule generally makes parties to the record incompetent. That this case falls among those excepted by the statute, scarcely admits of argument. The proposed witness, Burke, is a party to the record. Whether he is otherwise interested, makes no sort of difference. McMillan, the agent of the bank, with whom the transaction occurred, is deceased, and was so at the time of the trial. We have often said, that the purpose and policy of the statutes are, to exclude the living from testifying against the dead, because the latter can not be heard in contradiction. A contrary rule would open broad the door to the entry of innumerable frauds. That a party to a suit is, under the statute, incompetent to testify as to a transaction

with, or statement made by a deceased *agent* of another party to the record in the same suit, has several times been expressly decided by this court, and that is this precise case. *Warten v. Strane,* 82 Ala. 311; *Stanley v. Sheffield L. I. & C. Co.,* 83 Ala. 260.   See, also, *Miller v. Cannon,* 84 Ala. 59.

The concluding clause of the statute—"unless called to testify thereto by the opposite party"—is only declaratory of the common-law rule, which permitted the immunity of incompetency to be waived by the opposite party,—by which is meant the party to the transaction whose rights would be affected by the testimony offered.—*Dudley v. Steele,* 71 Ala. 423.

In this view of the law, it is immaterial that the interest of Burke was equally balanced; his exclusion as a witness not resting on the ground of interest merely, but upon the independent fact of his being a party to the suit and record.

It next becomes our duty to consider this case disembarrassed of so much of Burke's testimony as may be construed to have reference to any transaction or conversation between himself and McMillan, pertinent to the mortgage in controversy, or any other collateral facts in issue.   Burke being the only witness who testifies to any positive or express agreement between the parties to withhold the mortgage from registration, and to conceal its existence, we are left to make only such inferences on this subject as may be justified by the other evidence in the case.

The theory upon which the complainants' case must rest, then, is this: That Burke, at the time he executed the mortgage, was insolvent, and this fact was known to the Bank; that he was, however, reputed to be solvent and financially prosperous; and that the Bank fraudulently withheld the mortgage from the record, and permitted the mortgagor to remain in possession of the mortgaged property—a storehouse in which he was carrying on the mercantile business— for the specific purpose of giving him a fictitious credit; that the complainants' testator and others, being misled by the deceit, indorsed for, and loaned money to Burke, on the faith of the belief that no such mortgage existed, and thereby lost large sums of money, which they would not otherwise have lost.

It is manifest that the bill can be maintained only by proof of actual or positive fraud, either in the execution of the mortgage, or in the use made of it after its delivery to the Bank as grantee.   Our statutes of registration go no further

[Mobile Savings Bank v. McDonnell.]

than to protect subsequent purchasers for value, mortgagees and judgment creditors without notice, against unrecorded conveyances; and to neither of these classes do the complainants claim to belong, they being mere simple-contract creditors.—*Tutwiler v. Montgomery*, 73 Ala. 263; *Chadwick v. Carson*, 78 Ala. 116; Code, 1886, §§ 1810-1811. The mere failure to record the mortgage, without more, would not impair its validity as against a simple-contract creditor.

Nor is it pretended that the Bank, or any of its agents, ever made any positive representations touching the solvency or credit of Burke, which could have come to the ears of McDonnell, so as to have influenced him in making loans to, or indorsements for Burke. Even were this true, such a representation, even though false, would not constitute a basis of an action for damages, unless it was either "in writing signed by the party sought to be charged," or else made with the intent to defraud, which would involve the false affirmation of some alleged fact that the party making knows to be false, or of the truth of which he has no knowledge, or well grounded belief.—*Clark v. Dunham Lumber Co.*, 86 Ala. 220; 5 So. Rep. 560; Code, 1886, § 1734. Nothing can be found in this principle which can lend plausibility to the contention of the appellees.

We can discover nothing in the facts of this case which justified the conclusion, that there was any fraudulent intent on the part of the Mobile Savings Bank in originally taking the security. No question is raised as to the alleged *bona fides* of the debt which it was given to secure; and the conveyance embraced less than a third of the assessed value of the mortgagor's unincumbered property. If the instrument had been recorded at once, there would scarcely have been any available pretext upon which its validity could have been successfully assailed. Especially is this apparent in view of the fact, that the settlement between Burke and the Bank, on September 30th, 1884, of which the first of the series of mortgages constituted a part, operated to release McDonnell from certain debts to the Bank, which he had incurred as indorser for Burke, of over fifteen thousand dollars—or a sum greater than *that of the mortgage debt*. We can not suppose this release would have taken place, in this substitution of securities, unless the mortgage had been given. It enured, therefore, indirectly to McDonnell's benefit, as fully as it would have done had he been the beneficiary in the instrument. Whoever may have ground to complain of being

damaged by its execution, he could not do so with any show of truth or justice. Even fraud, without damage, gives no ground of action in equity, or at law.

This leaves but one ground upon which to maintain the bill, and that is the failure or refusal of the Bank to record the mortgage, and the alleged fraudulent motive with which this was done. There may, no doubt, be cases where a deed, or mortgage, not at first fraudulent in its inception, may become so by being actively concealed, or not pursued, "by which means creditors," as said in an old English case, "are drawn in to lend their money."—*Hungerford v. Earle*, 2 Vern. 261; *Hildreth v. Sands*, 2 John Ch. (N. Y.) 35. We are not dealing with the case of a deed, where the vendor is left in possession, contrary to the essential nature and terms of the conveyance, but with a mortgage, where continued possession by the mortgagor, for a length of time not unreasonably long, is consistent with the nature of the security. In such a case, *a fortiori*, to make the withholding of the instrument from the record fraudulent, especially as to debts afterwards created, it must have been done with the purpose of upholding fictitiously the credit of the mortgagor, so as to enable him to obtain money or goods of others, which he would not be likely to do if the instrument were recorded. In other words, there must be an actual intent to defraud, resulting in damage to some creditor of the grantor.—*Tryon v. Flournoy*, 80 Ala. 321; *Danner Land & Lumber Co. v. Stonewall Ins. Co.*, 77 Ala. 184; *Blennerhasset v. Sherman*, 105 U. S. 100.

It is not certain that the Bank, through its officers, was any better informed as to the solvency of Burke than McDonnell himself was. His credit seems at one time to have been excellent with both of them. At the time of Burke's suspension, he owed the Bank between seventy-five and eighty thousand dollars, and he owed McDonnell, contingently, between fifty-five and sixty thousand dollars, which soon afterwards actually accrued from this liability for previous loans and indorsements, and was proved by McDonnell as a claim against the trustee under Burke's assignment. Deducting the mortgage debt in question, this would leave but a few thousand dollars of difference between the credits thus extended by the two parties. In this estimate, we do not, of course, consider Burke's debt which he at one time owed the bank, and which was secured by pledge of Alabama State bonds. It is made to appear that McDonnell and

Burke were personal friends, and very intimate in their so-
cial and business relations, being constantly in each other's
company, and often discussing business in which they were
both mutually interested. It is common knowledge, that
men in failing circumstances frequently conceal their finan-
cial condition, not so much for the fraudulent purpose of
retaining a fictitious credit, as with the hope that better
times may bring them financial relief by producing a favor-
able turn in the wheel of fortune. It may have been so with
Burke. He does not seem to have made a fair disclosure of
his financial *status* to his friend, who made an explicit de-
mand on him for such an exhibit four or five months before
his failure by assignment, which, as we have said, was on
July 25th, 1885. The testimony of Boulet shows that this
exhibit of a balance-sheet of assets and liabilities made it
appear that he was worth two dollars for every one he owed.
It included the store-house embraced in the mortgage, but
made no disclosure of the mortgage incumbrance held on it
by the Bank. There is no intimation that the bank officers
ever knew of this statement, nor does it appear that McDon-
nell ever applied to them for any information as to the state
of Burke's indebtedness to that institution. If Burke, to
keep up his credit with McDonnell, made a statement which
showed him to be solvent, is it not just as probable that, with
a like object in view, he made one equally favorable to the
Bank? But it is said that the Bank refused to allow Burke
to continue to overdraw his account, and demanded the mort-
gage to secure a part of his indebtedness; and this showed
a knowledge of his insolvency, or reasonable ground to be-
lieve that he was insolvent. The first step argued only ordi-
nary prudence, and the second may be interpreted into a
desire to be made safe by a common mode of security often
exacted of solvent debtors. But, supposing the bank officers
to have been in doubt as to the solvency of Burke, present or
future, it was a delicate matter with which to deal, and a
subject demnding at their hands great prudence. A sus-
picion, unjustly magnified, or a fact exaggerated, might have
brought even a solvent debtor to speedy embarrassment, or,
perhaps, to financial ruin. Financial credit, like female vir-
tue, is often damned by being doubted. The fact, moreover,
that the mortgage originally taken in September, 1884, was
several times renewed, and was not recorded until Burke's
failure, lends credence to the view, that the mortgagee had no
well grounded belief that it was necessary to record it. Be-

sides, it was recorded immediately, when demanded by the necessity of the mortgagor's failure. Discarding Burke's testimony, as we have done, we are at liberty to infer that the Bank was under no obligation created by an agreement not to record, and no one of the mortgages was withheld for a longer period of time than that authorized by the statute regulating the subject of the registration of such conveyances.

We fully recognize the doctrine of the well-considered case of *Blennerhassett v. Sherman*, 105 U. S. 100, where the authorities bearing on the subject of the fraudulent withholding of mortgages from registration are ably reviewed. There, an insolvent debtor had executed a mortgage upon his entire estate, for a very large sum of money. The secured creditor not only knew of the debtor's insolvency, but actively concealed the mortgage by purposely withholding it from the record, and in the meanwhile represented the mortgage debtor as having a large estate and unlimited credit— all this being done for the fraudulent purpose of giving him a fictitious credit—and by this means he was enabled to contract other debts which he could not pay. This fraudulent intent was properly held to vitiate the mortgage as a valid security, and to render it void. The case of *Hilliard v. Cagle*, 46 Miss. 309, seems to go to the extent of creating an estoppel in favor of creditors generally, without any actual fraud being imputed to the mortgagee in withholding his mortgage from registration. This view is contrary to the spirit of our registration statutes, and does not seem to us to be based on sound reasoning. It affords protection to those not intended to be protected by the statute—to other than subsequent purchasers for value, mortgagees and judgment creditors.

After a careful examination of all the legal testimony in this case, we do not feel authorized to find that the mortgage in controversy, covering less than a third of the assessed value of the debtor's property, and perhaps not more than a fourth of its real value, was either fraudulent in its execution, or was withheld from record for the fraudulent purpose imputed by the bill to the mortgagee.

The chancellor erred, in our judgment, in so deciding, and his decree must be reversed. A decree will be rendered in this court, adjudging the complainants not to be entitled to the relief prayed, and dismissing the bill.

Reversed and rendered.

[Mobile Savings Bank v. McDonnell.]

NOTE.—On application for rehearing, the case was held under advisement until November 7, 1889, when the following opinion was delivered:

SOMERVILLE, J.—We have given very careful attention to the application for rehearing in this case, and are constrained, after due consideration, to overrule it. This we have done after an attentive examination of all the authorities cited on the briefs of counsel, and many others besides.·

The main point of contention is the admissibility of Burke's testimony. We held that, being a party defendant to the record—an indispensable party—he could not, therefore, testify to any transaction which occurred between him and McMillan, the deceased agent of his co-defendant, the Mobile Savings Bank, because he was prohibited from doing so by section 2765 of the Code (1886).

It is now urged that, inasmuch as a decree *pro confesso* was taken against Burke, this rendered him a competent witness to impeach for fraud the validity of the mortgage which he had executed to the Bank. The argument is, that this rendered him competent under the rules of the common law, and of equity practice, and, therefore, he is competent under the present statute, although he might be properly excluded if no decree *pro confesso* had been rendered. The point presented is one worthy of attentive examination, and has been argued by counsel on both sides with research, candor and ability.

We stated the rule of the common law to be, like that of the Roman law, that a party to the record was generally held incompetent to testify in a cause, by reason of the mere fact of his connection with the record, and irrespective of the question of his interest in the result of the suit. This rule, as Mr. Starkie observes, is not founded merely on the consideration of pecuniary interest, but, in part at least, "on principles of policy for the prevention of perjury." 3 Stark. Ev. *1061. Mr. Greenleaf adopts this as the better opinion, as the contrary principle would hold out to parties a strong temptation to perjury; and, therefore, he says, "the party is not admissible, without the consent of all the parties to the record, for the privilege is mutual, and not several."—1 Greenl. Ev. §§ 354, 329. The same view is supported by Mr. Stephen in his work on Evidence (Stephen's Dig. Ev., Art. 107); although the view of Mr. Best is, that

a party, who is not interested, is a competent witness.—1 Best on Ev. § 168.   The decisions, both in England and this country, are greatly conflicting on this subject, and, we may say, after much study of them, are environed by no little perplexity.

In this case, it is very important not only to ascertain the true rule in this respect, but the *reason* on which it is founded.   The Supreme Court of the United States has many times had occasion to discuss the question, and is committed to the broad view, that (irrespective of statute) the party to a record, although divested of all interest, is disqualified to testify in the cause, if his testimony be objected to by any other party to the record.   In *Stein v. Bowman*, 13 Pet. 209, an action at law, it was said the opposite rule "would hold out to parties a strong temptation to perjury, and we think it is not sustained either by principle or authority."   "It would," said Mr. Justice McLean, "lead to perjuries, and the most injurious consequences in the administration of justice."   "The exclusion," says Mr. Justice Nelson, in *Bridges v. Armour*, 5 How. 91, "is placed on the ground of public policy, which forbids a party from being a witness in his own cause,"   ·   ·   · 'the opposite rule "holding out to litigants temptations to perjury, and to the manufacturing of witnesses in the administration of justice."   That court has thus alway adhered with great strictness to "the common-law rule, that a party to the record can not be a witness, either for himself or a co-suitor in the cause," until its abrogation by statute in the year 1864.—*United States v. Clark*, 96 U. S. 37, 44.   There are many other courts that have taken the same view of this general rule of the common law, which is, of course, subject to many exceptions, based on necessity and convenience.   It has, for example, been held that a party may testify to collateral facts in a suit; as, facts authorizing a continuance; the service of notice to produce papers; search for lost papers, and, perhaps, the fact of loss itself, with a view of introducing secondary evidence; or to the contents of a lost trunk or package, and other like cases.

It is especially insisted that another exception to the rule is, that a party defendant, against whom a judgment by default, or decree *pro confesso* has been rendered, is competent, on the ground that he ceases to be a party to the record.   It is sought to sustain the admissibility of Burke's testimony on this ground—the record showing a decree *pro confesso* against him.

There are many cases on this question, and they are conflicting, both in England and the United States. In *Mant v. Mainwaring*, 8 Taunt. 139, a party to the record was held incompetent, although judgment by default had gone against him, and a release was executed by the plaintiff; while in *Worrall v. Jones*, 7 Bing. 395, a later case, it was held that a defendant, who had suffered judgment by default, and had no interest in the event of the suit, was, by his own consent, admissible as a witness for the plaintiff, the only objection urged being that he was a party to the record. The doctrine of the latter case prevailed in England, as to actions at law, until the year 1843, when an act of Parliament removed incompetency arising from crime or interest, but preserved the old common-law rule in actions at law as to parties "named in the record," who were still declared incompetent; and this continued to be the law until the act of 14 & 15 Vic. c. 99, § 1.—2 Taylor Ev. §§ 1347, 1349. And it was further deemed expedient, at the same time, to provide by special enactment that a defendant in a court of equity might be examined in behalf of the plaintiff, or of any co-defendant.—*Ib.*

The only ground on which the principle contended for can be logically sustained very clearly must be, that a judgment by default, or decree *pro confesso*, like a *nolle prosequi*, or separate verdict, terminates the suit as to such defaulting defendant, so that he ceases to be a party to the record; *or else*, that this ends his interest in the litigation, and that a party defendant, who has no interest, may testify against the protest of other parties who are prejudiced by his testimony.—1 Greenl. Ev. § 355.

There are several early cases in this State, prior to the Code of 1852, in which mere *nominal* parties to the record, without any interest in the event of the suit, were allowed to testify; and others where they were admitted to testify against their interest, when called by the opposite party. *Prewitt v. Marsh*, 1 S. & P. 17 (1831); *Duffee v. Pennington*, 1 Ala. 506 (1840); *Cunningham v. Carpenter*, 10 Ala. 109 (1846); *Burns v. Taylor*, 23 Ala. 255 (1853). So, in *Scott v. Jones*, 4 Ala. 695, a defendant in an action of assumpsit, against whom a judgment by default had been rendered, was held to be competent to prove the other defendants were his partners; and this ruling was followed in *Gooden v. Morrow*, 8 Ala. 486.

The rule in chancery cases, too, we admit, was, perhaps,

even more liberal in according to defendants the right to testify, where they were not interested. In *Colgin v. Redman*, 20 Ala. 650 (1852), a party defendant to a deed of assignment was allowed to testify as to matters in regard to which he had no interest, or which militated against his interest; it being said that "the mere fact that a witness was a party to a suit in chancery is no sufficient reason to exclude or suppress his deposition." In *Crawford v. Barkly*, 18 Ala. 270 (1850), a defendant in equity, against whom a decree *pro confesso* had been rendered, was allowed to testify, on the ground that he was not interested. And in *Royall v. McKenzie*, 25 Ala. 364 (1854), it was said, *arguendo*, that a defendant trustee might be a witness for his co-defendant in equity, if he had no interest in the suit; but the witness there was interested, and his exclusion was held proper on that ground. The case of *Montandon v. Deas*, 14 Ala. 33 (1848), contains a strong *dictum* in support of the view, that a party defendant, if his interest was precisely balanced, might testify against a co-defendant. But, in that case, it is shown clearly that no objection was interposed to the testimony, until the case reached the appellate court, and the case could have well been decided on this ground.

It is admitted that these decisions apparently go very far to sustain the contention of the appellant's counsel. Their force is weakened, however, as we shall seek to show, by the obvious fact, that they are opposed to the policy of our present statute, which seeks to avoid the strong temptations to perjury which might flow from allowing the living to testify against the dead. They ignore, moreover, that *reason* of the common-law rule, to which we have adverted, which was adverse to admitting *parties* to testify, on the ground, not of interest merely, but of that bias and prejudice begotten of forensic contention, which is often more potent than pecuniary interest. This policy was founded on man's inherent love of triumph, and his correlative aversion to defeat in all things, however profitless the result in pecuniary gain. This principle was well illustrated in the barbarous practice of wager by battle, which was once a common mode of settling lawsuits, criminal and civil, and was nothing more nor less than a duel to the death between ferocious litigants to settle a litigated lawsuit.

The policy of these decisions, we may further observe, was reprobated by the Code of 1852 (§ 2302), which re-

[Mobile Savings Bank v. McDonnell.]

moved all incompetency of witnesses based on crime (except perjury or subornation of perjury), or interest in the event of the suit (including liability for costs), "unless the judgment would be evidence for [or against] him in another suit," such objection going only to his credit. But it was declared that this section should "not be construed" so as to authorize *parties* to be witnesses, further than expressly authorized by other provisions of the Code.—Code, 1852, § 2302. This was a legislative declaration, in effect, that the common-law rule as to parties was sound in policy, and was to be maintained; and it tore up by the roots, so to speak, all previous decisions. From that time to the act of February, 1867, we find no case where a party to the record was held to be competent; and this act itself affirmed the same rule, inferentially, by removing the recognized incompetency of *parties as such*, irrespective of the question of interest, with certain *excepted cases*.—Rev. Code, 1867, § 2704. And so with all subsequent statutes.—Code, 1876, § 3057; Code, 1886, § 2765.

There is no occasion, in this view of the case, to declare these decisions overruled, although they are opposed by strong authority. For example, it is held in *Swanzy v. Parker*, 50 Penn. St. 441; 88 Amer. Dec. 549, where the cases are reviewed, that a defaulted defendant, although without interest in the suit, is incompetent to testify, because he is still a party to the record; and *Wolf v. Fink*, 1 Penn. St. 435, is an authority to the same point. So, in *De Wolf v. Johnson*, 10 Wheat. 368, a defendant against whom a decree *pro confesso* had been taken was held by the United States Supreme Court to be incompetent as a witness, and was excluded because he was still a party to the record. The latter is just this case.

It will be found generally true, that where contrary rulings have been made, and the reasons given, defaulted parties have been admitted on the alleged ground that they have ceased to have an *interest* in the suit, not on the ground that they had ceased to be *parties*; as in *Lupton v. Lupton*, 2 John. Ch. 614, a case in equity, and *Worrall v. Jones*, 7 Bing. 395, which was an action at law.

Under our present practice and existing statutes, unlike what they formerly were, shortly prior to the Code of 1852, it is very certain that a decree *pro confesso* does not now operate to discharge a defendant as a party to the record, or sever his connection with the cause. The most to be ac-

[Mobile Savings Bank v. McDonnell.]

complished by it is as a conclusive admission of the facts alleged in the bill.—Code, 1886, § 3483. The defendant in default can still "appear and contest the decree on the merits of the bill, or may appear before the register on a reference." Code, § 3485. And he may also move to dismiss the bill for want of equity.—*Madden v. Floyd,* 69 Ala. 222. He is still invested with the authority to show himself an active and troublesome litigant, in this limited field of operation.

If we should even regard this question under discussion as a doubtful one under the old law—one on which the authorities everywhere have been at variance—the history and phraseology of our legislation show that the policy of our present statute, as embraced in section 2765 of the Code of 1886, was to prohibit parties from testifying as to certain transactions with deceased persons, within the specified exceptions, because of the injustice done the opposite party by reason of want of mutuality—his equal footing being destroyed by the death of his witness, with whom the alleged transaction or conversation occurred. It was observed in *Kumpe v. Coons,* 63 Ala. 448, that this statute "was intended as a revision of the whole subject of the competency of witnesses because of interest, or because of their relation to the suit or proceedings, and to substitute the rule prescribed by them, not only for the rules of the common law, but for the provisions of former statutes." In *Dudley v. Steele,* 71 Ala. 423, it was said that the statute, as now existing in section 2765 of the Code, enlarged the former common-law rule of competency, but "preserved the common-law rule as to the class of excepted cases." This clearly means those exceptional cases in which parties, or interested persons, were allowed to testify at common law, which do *not violate the policy, or contravene the plain purpose of the statute* as it now exists; as where one party to the record was called to testify in favor of the opposite party, against his own interest, which was the very case of *Dudley v. Steele, supra.* The case of *Dismukes v. Tolson,* 67 Ala. 386, is another illustration of our proposition. We there ruled, that original entries made by a defendant in his own shop-books, although admissible ordinarily in his own favor under certain restrictions, as an exception to the common-law rule excluding parties, could not be proved by himself, in a suit brought by the administrator of a deceased person, where such entries had reference to a transaction with the deceased in his lifetime. Such evidence was held to violate the policy of the

[Mobile Savings Bank v. McDonnell.]

statute, which was said to be, that "there should be no admissibility, unless there was mutuality; that when the lips of one party to a transaction are sealed by death, those of the other must in like manner be sealed by law."—*Miller v. Cannon*, 84 Ala. 59; *Welch v. Adams*, 56 Amer. Rep. 521; 3 Brick. Dig. 825–26, and cases cited.

To reiterate: parties to the record were incompetent witnesses at common law, except in certain cases. The statutes of this State now make parties competent to testify, except in a particular class of cases—*i. e.*, generically, where the transaction testified to was with a deceased person. We deduce the rule, that the common-law *exceptions*, whereby parties were held competent in certain cases, *will not now be engrafted on the present statute*, where such exceptions are *repugnant to the obvious policy of such statute*. Only such of these common-law exceptions as do not contravene the purposes of the present statute, will be recognized as now being in force. The present case, in our judgment, is not one of them.

Our conclusion is, that Burke remained a party to the record, notwithstanding the decree *pro confesso* against him; and being a necessary, and not a nominal party, he ought not to be allowed to testify, as to any transaction with a deceased agent of his co-defendant, the Savings Bank, unless called to testify thereto by such party, whose rights would be injuriously affected by his testimony.

The other objections to the opinion and judgment heretofore rendered in the cause will be overruled.

The application for rehearing is refused.