STEINER et al. v. EPPINGER et al.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1894.)

No. 194.

1. WITNESS—COMPETING—TRANSACTIONS WITH DECEDENT.
    In an action against executors for advances made to their testator on goods consigned to plaintiffs and for charges paid thereon, plaintiff testified as to his efforts to sell the goods, the prices he obtained, and the correctness of the charges made. *Held,* that this was not within the rule (Rev. St. § 858) excluding testimony as to statements by and transactions with a deceased person.

2. APPEAL—REVIEW—HARMLESS ERROR.
    The admission of testimony as to what was the witness' "understanding" of a certain transaction is harmless error where other conclusive evidence in the case shows that this understanding was correct.

3. SAME.
    A judgment will not be reversed for the admission of incompetent testimony on unimportant points, or of irrelevant evidence, unless there is reason to believe that injustice has been caused thereby.

In Error to the Circuit Court of the United States for the Middle District of Alabama.

This was an action by Eppinger & Russell against J. M. Steiner and others, as executors of Joseph Steiner, in which plaintiffs had judgment, and defendants bring error.

H. C. Tompkins and J. C. Richardson, for plaintiffs in error.

Thos. H. Watts and Roquemore & White, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges.

McCORMICK, Circuit Judge. On the 18th April, 1890, this action of assumpsit was instituted. It claimed of the defendants, by the common counts of debt, money loaned, account stated, and money paid for and at request, etc., the sum of $4,735.24. This claim is made up of $4,000, advanced defendants' testator August 24, 1886; $715.47, excess of charges over proceeds of sales of cedar realized August 3, 1888; and $425.27, balance of interest account to August 3, 1888,—less $405.50, proceeds sale of cedar due October 12, 1886.

The plaintiffs in error (defendants below) presented 16 elaborate pleas to the action. All the exceptions taken and saved in the circuit court are brought up in a single bill of exceptions. Economy of time and space, by numerous cross references, is exercised in its construction. With these savings it covers 239 pages of the printed record. According to our understanding of these cross references, the plaintiffs in error made and saved 1,269 exceptions to the rulings of the circuit court on the introduction of testimony, and 16 exceptions to the charges given or refused. Much the greater part of these were renewals of 30 grounds of objection early made to the introduction of evidence offered by the plaintiffs below, each of which each time presented challenged consideration and judgment, and, being brought up, is presented to us for review. Their assignment of errors covers 12 pages of the

printed record, and separately sets out and distinctly numbers 71 specifications of error relied on by them to reverse the judgment of the circuit court. If the counsel for the plaintiffs in error reciprocate in any measure the profound respect we entertain for them, they have never suspected that we would deem it our duty to notice in detail these numerous errors assigned, and the almost innumerable exceptions on which the assignment reposes. Waiving all consideration of the justice and policy of imposing on a court of errors the task of grouping an array of tentative and technical exceptions and assignment of errors, we trust our method of grouping the errors assigned in this case will not prove invidious.

The spirited defense in this case appears to have been made and to be continued on the theory that the 1,198 cedar logs last shipped by Joseph Steiner to Eppinger & Russell were sold to them at not less than 90 cents per cubic foot, at which price it would have more than paid the $4,000 advanced thereon after paying all the proper charges. This theory is refuted by the written correspondence between the parties, given in evidence. The construction of this written evidence is matter of law. The duty of construing such evidence cannot be remitted to the jury. The trial judge must construe it. He did construe it in this case.

One of the reserve defenses of the plaintiffs in error was a claim of set-off for damages resulting from the unfaithfulness or unskillfulness of Isaac Eppinger and of Eppinger & Russell in handling various previous shipments of cedar made to them for account of Joseph Steiner. This claim is concluded by the settlement to 24th July, 1886, shown in the letter of Eppinger & Russell of that date, the receipt of which by Joseph Steiner clearly appears from his two letters of 8th August, 1886, and from the tenor of all of their subsequent correspondence. The destruction of these two defenses sweeps from the field of our review the bulk of the exceptions taken on the trial to the introduction of evidence and to the charges of the court. There remain the pleas of recoupment for damages resulting from the alleged wrongful handling of the 1,198 cedar logs last shipped. The temper and tone of the defense below, as shown by the record, strongly imply the suspicion that the defendants in error had substituted, or suffered to be substituted, other inferior cedar for that shipped them by Joseph Steiner, and the further suspicion that the bill of charges on these last consignments is wholly fictitious. There is no proof tending to excite such suspicions. There is proof, clear and uncontradicted, ample to exclude such suspicions from impartial minds. The bill of charges is supported in every particular by the testimony of Cyriax, the bookkeeper and accountant, and by the testimony of Jesse I. Eppinger, the general manager, both of whom show their personal knowledge of the matters to which they testify. The testimony of Isaac Eppinger is largely to the same effect. The dealers to whom they sold the wood, and others to whom they attempted to sell it, the yard master with whom it was stored, and others who had and received charges on it, substantially corroborate the testimony of the three witnesses named. And this mass of testimony is sub-

stantially uncontradicted as to the fact that the prices obtained for the wood were its full value at the time of sale; that, after its arrival in New York and its inspection there, it could not be sold for the price that Joseph Steiner wanted to get for it, or for enough to cover the charges and the advance Eppinger & Russell had made on it. Very naturally, if not unavoidably, the conditions continued to grow worse. After the wood had been held nearly two years, Joseph Steiner visited New York, and had a personal interview with Isaac Eppinger and with Jesse I. Eppinger. J. T. Steiner, one of the plaintiffs in error, was present at these interviews. Joseph Steiner was on his way to Europe. His residence and place of business was Greenville, Ala. In this interview he told the Eppingers, "in case they wanted any more cedar, they should correspond with the Greenville house just the same as if he was there." The next day after this interview he sent his son J. T. Steiner to the yard to see if the cedar was there, and to look at it if it was there. His son went, and immediately on his return reported to his father what he had done and seen. They sailed for Europe without again seeing Eppinger & Russell. This was about the 1st of June, 1888. Very soon thereafter the cedar was sold. On July 19, 1888, Eppinger & Russell did write the Greenville house, and that house replied under date July 22d:

"Our Mr. J. S. wrote us from New York before sailing that you would probably want some shipments. Since then we have decided to sell all of our wood here, and we do not care to ship with uncertainty as to price and time of sale. How soon shall we expect returns for lot now in good hands?"

The jury found that the evidence proved the account. It is difficult for us to see how they could honestly have found otherwise. It is contended that Isaac Eppinger, a party to this suit against executors, should not have been permitted to testify to the matters embraced in certain of his answers which were admitted. He should not have been permitted to testify to any transactions with, or statements made by, the testator. Was he permitted to testify to any such matters? We think he was not. He did not testify as to any statement made by the testator. He testified as to his efforts to sell the cedar, as to the correctness of the bills of particulars of money paid out in New York for charges on the same, and as to the prices obtained for it. What personal or competent knowledge of these things had Joseph Steiner to which he could have deposed had he been living? It seems to us that the trial judge correctly construed the statute on this subject. Rev. St. § 858. He duly limited the admission of this witness' testimony, as required by the sound construction of that statute. Wood v. Brewer, 73 Ala. 262; Miller v. Cannon, 84 Ala. 59, 4 South. 204; Gamble v. Whitehead (Ala.) 11 South. 293; Lewis v. Meginniss (Fla.) 12 South. 19.

It is further contended that the witnesses testified, not from independent memory, or from memoranda made wholly by themselves, but obviously from books kept in the office; that their testimony was not the best evidence; and that it should have been excluded as hearsay. We do not so understand any of the material

parts of their testimony. It is objected that one witness, Cyriax, testifies as to his "understanding" of the way in which—that is, for whose account—Eppinger & Russell held this cedar. Other competent and conclusive proof—the written correspondence of the parties—shows that his understanding was correct, and his testimony on this subject was harmless, however inadmissible. It is objected that another witness, Jesse I. Eppinger, was allowed to testify as to the manner of Joseph Steiner when last interviewed by the witness in New York. The language of the witness to which the objection is made is: "He seemed indifferent about it." Witnesses are often required, in a proper case, to testify as to whether a party was calm or was excited when certain acts were done or words uttered by him, or by others to him or in his presence. In this case, and in reference to the same incident, J. T. Steiner, one of the plaintiffs in error, in giving his evidence on the witness stand, used the language: "Father seemed greatly excited." This plaintiff in error, in reference to another incident, told the jury from the witness stand: "Father was mad about not having received any returns from the cedar, and he did not like the idea of taking forty-five cents for it." It would seem, therefore, that, in the judgment of the plaintiffs in error, this was a proper case in which to show the state of the feelings of one of the parties at certain times punctuated by the proof. Be this as it may, it is clear to us that, if there was error in admitting the testimony in question over objection, it is not such error as requires a reversal of the judgment. "The modern tendency, both of legislation and of decisions of courts, is to give as wide a scope as possible to the investigation of facts. Courts of error are specially unwilling to reverse cases because unimportant and possibly irrelevant testimony may have crept in, unless there is reason to think that practical injustice has thereby been caused." Holmes v. Goldsmith, 147 U. S. 150, 13 Sup. Ct. 288. The judgment of the circuit court is affirmed.