Morrow v. Allison.

B. F. PORTER, for appellant.

---

# MORROW vs. ALLISON.

[BILL IN EQUITY BY DISTRIBUTEES TO SURCHARGE AND FALSIFY ADMINISTRATOR'S SETTLEMENT IN PROBATE COURT.]

1. *Equitable relief against probate decree, on ground of fraud.*—A decree of the probate court, rendered on the final settlement of an administrator's accounts, will be opened and set aside in equity, at the instance of non-resident distributees, who had no actual notice of the proceedings, on proof that the administrator claimed and was allowed a credit for a payment which he must have known he had never made.

2. *Administrator's counsel fees on final settlement.*—An administrator cannot complain on error of the chancellor's refusal to allow him a credit for counsel fees incurred on the final settlement of his accounts at the instance of the distributees, when it appears that the institution of the suit was caused by his own misconduct, that some of the items litigated were properly decided against him, and that the vouchers presented by him were for his counsel's entire services in the suit.

3. *Compensation of agent.*—A person to whom a note is delivered, to be handed by him to an attorney for collection, thereby undertakes the performance of a mere friendly office, and does not assume a business agency for which he is to receive compensation; nor can he maintain a claim against the estate of the person from whom he received it, for compensation for services voluntarily rendered by him, in the prosecution of the suit, after the death of the owner, not in execution of any contract.

APPEAL from the Chancery Court of Morgan.
Heard before the Hon. JOHN FOSTER.

Morrow v. Allison.

THE bill in this case was filed on the 6th September, 1854, by Lewis Allison, Joseph Allison, and others, the surviving brothers and sisters of Thomas Allison, deceased, and the children of his deceased brothers and sisters, as heirs-at-law and next of kin of said decedent; against Thomas Morrow, as the administrator of the estate of said decedent, and Thomas Lynch and the administrator of Thomas Price, deceased, who were the sureties on the said Morrow's official bond as such administrator. Its object was to set aside a decree rendered by the probate court of said county on the 13th December, 1852, on final settlement of the accounts and vouchers of said administrator, and compel him to make another settlement. The complainants resided in Kentucky, and alleged that they had no notice of the proceedings in the probate court until within twelve months before the filing of their bill. The principal items in the administrator's account, the correctness of which was contested by the complainants, were—1st, a credit of about $300 allowed him as a payment made by him to Agnes Jones, or Agnes Cunningham; 2d, a credit of $300 allowed him as a payment made to Thomas Lynch, for services rendered in collecting a debt due to the estate, from Albert W. Jones and Crawford Jones, in Mississippi; 3d, a credit of $100 allowed him as a payment made to Hugh D. Morrow, for expenses incurred in going to and returning from Mississippi for the purpose of collecting the same debt; and 4th, a debit of $1150 as the amount received on the Jones debt, whereas the complainants insisted that he was chargeable with the whole amount of the debt, which exceeded $3,000; and with reference to these several items, the complainants charged fraudulent concealment and misrepresentation on the part of the administrator.

Separate answers were filed by the defendants. The administrator denied all the charges of fraud and misconduct, insisted on the correctness of his settlement with the probate court, and demurred to the bill for want of equity. The chancellor overruled the demurrer, and, on hearing on pleadings and proof, set aside the probate decree, and ordered the master to state an account between the admin-

istrator and the estate. He held, 1st, that the credit for a payment to Agnes Cunningham was excessive, and should be reduced to $143; 2d, that the credit for a payment to Thomas Lynch should be disallowed entirely; and, 3d, that the administrator was only chargeable with that portion of the Jones debt which was actually collected by him; and the account was ordered to be taken accordingly. On the hearing before the master under the reference, the administrator claimed a credit of one hundred and fifty dollars, as a fee to his solicitors for their services in the cause, and reserved an exception to the refusal of the master to allow it; and he also reserved exceptions to the rulings of the master in relation to the payments to Agnes Cunningham and Thomas Lynch. The chancellor overruled the exceptions, and confirmed the report; and his decree is now assigned as error.

THOS. M. PETERS, for appellants.

D. C. HUMPHREYS, and ROBINSON & JONES, contra.

R. W. WALKER, J.—In the partial settlement made by the administrator on the 20th of July, 1850, he is credited by $42 95, paid Agnes Jones; and on his final settlement he is credited with $260 paid Agnes Cunningham, who is shown to have been the same person as Agnes Jones. It is clearly proved that the administrator never paid Mrs. Cunningham more than $143, in all; that of this amount, $43 was paid in money, and the balance in property, most of which was estimated at prices far beyond its value; and that the receipt for $260 to which Mrs. Cunningham put her mark, was not read to her, and she did not know what it contained. The act of the administrator in seeking and obtaining credit for $160 which, according to the evidence, he must have known he had not paid out, was a fraud upon the estate, which justified the chancellor in opening the final settlement, at the instance of the distributees, who were non-residents, and had no actual notice of the settlement, or of any of the proceedings in the probate court. Cowan v. Jones, 27 Ala. 317; Loomer v. Wheelright, 3 Sandf. Ch. 135 (153); Reigel v. Wood, 1 Johns. Ch. 402; Kennedy v.

*Daly,* 1 Sch. & Lefr. 135 (154); *Mallett v. Dexter,* 1 Curtis' C. C. R. 178–181; *Foute v. McDonald,* 27 Miss. 610; *Allen v. Clark,* 2 Blackf. 343; *ib.* 377; *Manson v. Titsworth,* 18 B. Monr. 582. How it might be, if the complainants had appeared and defended in the probate court, we need not inquire.—See *Greene v. Greene,* 2 Gray.

[2.] The misconduct of the administrator led to the institution of this suit; and in its progress he has litigated some matters which the chancellor has properly decided against him. It is true that he has successfully contested some of the claims set up by the complainants; and it may be that, if he had asked credit for reasonable fees paid to counsel for defending him against the claims thus held to be unfounded, he would have been entitled to it. But the claim is brought forward, in a gross amount, for the services of counsel in the entire case, when it is certain that much of the litigation, and a large portion of the counsel's labor, were the result of the administrator's fault. The chancellor, with the lights before him, could not designate any particular amount which would be a proper charge against the estate, and, according to the rule adopted in *Pearson v. Darrington,* (32 Ala. 230–273,) he did not err in overruling the defendant's exceptions on this point.—See, also, 24 Ala. 295.

[3.] Although it is shown that Lynch did render some services in the collection of the $1150 received by the administrator on the Jones debt, which was of benefit to the estate, we do not think that the chancellor erred in treating his claim for compensation as an improper charge against the estate. Lynch himself repudiated the idea that he was appointed by Allison as his agent to collect this note. On the contrary, he insisted that the note was absolutely, and for a valuable consideration, transferred to him by Allison. In his dealings with Hodges, as well as in his conversations with others, he claimed to be the sole owner of the note. If, in point of fact, he was the mere agent of Allison for the collection of the note, it is not easy to reconcile this claim to exclusive ownership of the property of his principal, with good faith on his part. On the other hand, his claim of ownership seems inconsistent with his subsequent conduct in allowing more than two-thirds of what was paid

over by Hodges to pass into the hands of Allison's administrator, as assets of the estate; and is contradicted, moreover, by his own statements, made to the witness Greenberry Riggs, shortly after the death of Allison. There is, it must be admitted, a good deal of uncertainty as to the precise relation which Lynch bore to this note on Jones. But we are inclined to consider the evidence of the witness just referred to as furnishing the most probable explanation of this matter. It is shown that Allison was very old and infirm, and unable to attend to business; and that Lynch was an intimate friend of his, disposed to do him favors, and much confided in by him. According to the statement which Lynch made to Riggs, the former, having had some conversation with Hodges, (who had been collecting money from the Joneses on other claims,) in reference to this note held by Allison, visited the latter for the purpose of communicating to him what he had heard from Hodges; and on that occasion, Lynch having told Allison what he had learned from Hodges, Allison handed him this note, " to give to Hodges for collection, to make the best arrangement he could with it;" no receipt being given by Lynch either for the return of the note, or the money when collected. Adopting this version of the transaction between Allison and Lynch, the undertaking of the latter was confined to the simple delivery of the note to Hodges for collection, upon the most favorable terms he could obtain And looking to the previous relation between the parties, it is very clear that their mutual understanding at the time must have been, that Lynch was voluntarily undertaking to perform, without reward, a mere friendly office for Allison, not assuming a business agency for which he was to receive compensation.—*Morrison v. Orr*, 3 St. & Por. 49–52. This agency, such as it was, terminated when Lynch concluded the contract with Hodges, and handed him the note. Any assistance which Lynch may have rendered in the prosecution of the suit, after the death of Allison, was voluntary on his part—not in execution of any contract with Allison; and is no foundation for a claim for compensation against the estate of the latter.

Decree affirmed.