# Hall *v.* Pegram.

*Bill in Equity to correct Errors in Probate Decree on Final Settlement of Administrator's Accounts.*

1. *Equitable relief against probate decree.*—Under the settled construction of the statute authorizing the correction of any errors of law or fact which have occurred in the settlement of a decedent's estate, "to the injury of any party, without any fault or neglect on his part," by bill in equity filed within two years (Code, 1876, § 3837; now changed by § 3536, Code, 1886), the party complaining must show some equitable ground of relief, whereby, by reason of accident, mistake or fraud, unmixed with fault on his part, he was prevented from interposing the matters relied on before the rendition of the probate decree; and the court adheres to this construction, without intimating any opinion as to the effect of the change in the statute.

2. *Same; case at bar.*—In this case, a bill was filed by a foreign domiciliary executor and trustee, to set aside a probate decree rendered here on final settlement of the accounts of a resident administrator, on account of errors of law and fact, by which a claim of over $12,000 was allowed in his favor; and it appearing, as the court finds, that the administrator filed said claim only a few days before the expiration of the eighteen months allowed for filing claims, and never mentioned it in his letters to the executor, while giving full information as to all other claims; that it was not brought forward or mentioned in a partial settlement made soon afterwards, at which the executor and non-resident legatees were represented by counsel, and at which a balance of over $10,000 was found against the administrator; that personal notice of that settlement was given to the executor, and notices were sent by mail to the several non-resident legatees, but no notice of the final settlement was given to them, though the record recites notice by publication to all parties interested, nor did they appear in person or by attorney; that the claim was *prima facie* groundless, and no evidence was introduced establishing its validity and correctness; *held*, that the conduct of the administrator acquitted the executor of all negligence or other fault in connection with the allowance of the claim, and authorized a re-statement of the account in equity.

3. *Relation of drawer and acceptor of draft.*—When one man gives a draft on another, and the latter accepts and pays it, the legal presumption is, not that the money is advanced as a loan, or for the accommodation of the drawer, but that the party paying is indebted to him for the amount specified.

4. *Re-examination of witness, as matter of discretion.*—The re-examination of a witness, in a chancery cause, is matter of discretion with the chancellor; and this court can not review the exercise of this discretion.

5. *Testimony of party, as to transactions with decedent.*—An administrator having been allowed, on final settlement of his accounts, a claim for

[Hall v. Pegram.]

moneys paid by him, at different times, on drafts drawn on him by the decedent while in life; and the settlement being afterwards impeached in equity, by the foreign domiciliary executor, on account of alleged errors of law and fact; the administrator can not testify in his own behalf (Code, § 2765), that he had no money in his hands belonging to the decedent, at the time the several drafts were drawn and paid, but advanced the money as a loan, or for the accommodation of the drawer, at his request, or under an agreement between them.

6.   *Allowance for services of accountant.*—An administrator is entitled, on final settlement of his accounts, to a credit for the reasonable services of an accountant in making out and stating his account current, when it appears that the accounts are complicated or difficult; but not when the complication, confusion or difficulty was caused by his own carelessness or negligence.

7.   *Domiciliary and ancillary administration; parties to bill for settlement.*—Where there is a domiciliary executor in Virginia, and an ancillary administration in Alabama, the excess of assets in the administrator's hands, after payment of creditors in Alabama, is properly payable to the domiciliary executor; consequently, the latter may maintain a bill against the administrator, for an account and settlement, without making the legatees and devisees parties.

APPEAL from the Chancery Court of Mobile.

Heard before the Hon. THOS. W. COLEMAN.

The bill in this case was filed on the 24th November, 1886, by Richard G. Pegram, as executor of the last will and testament of John D. Ragland, deceased, under appointment from the proper court in Virginia, of which State the testator was a resident at the time of his death, though he died in Mobile, Alabama, in April, 1872; against Fred. Hall, as administrator under appointment by the Probate Court of Mobile; and sought to correct certain alleged errors of law and fact in a final settlement of his accounts by said Hall, had and made in the Probate Court of Mobile on the 28th August, 1886.

The following are the material portions of said final decree: "This being the day heretofore appointed for the final settlement of the accounts of Fred. Hall as administrator of the estate of John D. Ragland, deceased, and of his administration thereof, now comes the said Hall, and moves the court to proceed with the said settlement, and to pass and allow his account as a final settlement of his administration of said estate. And it appearing to the satisfaction of the court that heretofore, to-wit, on the 29th July, 1886, the said Hall filed in this court his accounts, vouchers, evidences and statements for the final settlement of his administration of said estate; and that pursuant to the order of the judge of said court, then made, notice of such settlement was given to all persons interested, by the publication thereof in the

*Mobile Register*, a daily newspaper published in said county, for three successive weeks; and that such notice contained the name of Fred. Hall, the administrator, the name of John D. Ragland, the deceased, the day appointed for the settlement, and the nature thereof, and that the same was to be, as proposed, a final settlement of Fred. Hall, administrator of said estate; the court now proceeds to examine and audit said account. And it appearing to the satisfaction of the court, as shown by the account as thus audited and stated, that the assets of said estate with which Hall as administrator is chargeable amount to the sum of $67,002.34; and that the credits to which he is justly entitled, for expenses of said administration, properly and necessarily incurred, amount to the sum of $71,263.55, leaving a balance of $4,261.21 of credits over and above the assets; it is therefore ordered, adjudged and decreed, that the account as thus stated be, and the same is hereby passed and allowed as a final settlement as aforesaid; and that the balance as ascertained to be due to said Hall, from said estate, is $4,261.21; and that such balance was for expenses of administration necessarily incurred; and that said account be recorded;" and Hall having resigned, that his resignation be accepted.

In the administrator's account as stated on this settlement, he was allowed a credit of $500, for the services of an accountant who prepared his account current; and also a claim in his own favor amounting to $12,720.39, for moneys paid by him on orders, drafts and letters, drawn and written by the testator, at different dates, between the 15th December, 1871, and the 25th March, 1872, as shown by the several vouchers which were annexed. The complainant assailed in his bill the correctness of these two items, denying that the testator's estate was indebted to said Hall in any sum; alleging that he had no notice of said final settlement, or of the filing of said claim by the administrator, and that the administrator had "studiously concealed from complainant and the parties interested all knowledge or information of said claim."

The defendant filed a demurrer to the bill, assigning as grounds of demurrer: 1st, that the complainant does not show by his bill that he has any interest in the estate of said Ragland; 2d, that he does not show any interest in himself, in the personal property of the estate, other than as executor of said Ragland's will; 3d, that the legatees and devisees named in the will are necessary parties to the bill; 4th, that

the bill does not state facts showing injury to the complainant from the alleged errors in said settlement; 5th, that the bill does not state facts which acquit him of fault or negligence. The chancellor overruled the demurrer, and the defendant then filed an answer, in which he denied the alleged errors in his final settlement, and stated the facts on which he relied as justifying the allowance of the claims.

The defendant was orally examined, under an order made by the register, as a witness for himself, and testified, (among other things) as follows :   "On Dec. 5th, 1871, I had no money on hand belonging to John D. Ragland, nor on either of the following dates:   Dec. 18, 26, 1871; Jan. 16, 22, 23; Feb. 3, 6, 9, 10, 17, 23, 1872; March 21, 1872. I had no money of his on hand, at any time between 5th December, 1871, and March 21, 1872."   (The dates mentioned are the dates of the several drafts and orders of Ragland, mentioned in the administrator's claim, and for which he claimed credits.)   The complainant objected to each part of this testimony, "on the ground that defendant can not testify concerning a transaction with said Ragland, now deceased."   The witness was also asked to "look at check No. 185, for $1,500, dated Dec. 5, 1871, and telegram attached thereto, and explain the transaction to which they refer, and of which they were a part;" and thus answered: "I received the telegram from Mr. Ragland, and sent him the money; that is all I know about it."   The complainant objected to this question and answer each, and to others of the same kind, on the ground above stated; and these several objections were sustained by the chancellor.

On final hearing, on pleadings and proof, the chancellor held the complainant entitled to relief, and rendered a decree setting aside the final settlement, and ordering a re-statement of the admininistrator's accounts by the register; directing him to take the administrator's account, "as filed for said final settlement, as correct in all things, except that he will strike from the credit side of said account the two items" above specially mentioned—namely, the administrator's claim for $12,720.39, and the allowance of $500 for the services of an accountant.   The defendant appeals from this decree, and here assigns it as error, together with the overruling of his demurrers to the bill, and the chancellor's rulings on evidence.

GREG. L. & H. T. SMITH, for appellant.—(1.) The complainant is not, on either his pleadings or proof, entitled to relief against the decree of which he complains.    He does not show that he is injured by that decree, and does not acquit himself of negligence in failing to appear and defend against it.    The decree recites due notice by publication against all persons interested; and the evidence shows, in addition, that the estate was represented by counsel resident in Mobile.—*Otis v. Dargan*, 53 Ala. 187; *Stabler v. Cook*, 57 Ala. 25; *Humphreys v. Burleson*, 72 Ala. 4; *Waldrom v. Waldrom*, 76 Ala. 289; *Bowden v. Perdue*, 59 Ala. 479; *Noble v. Moses Brothers*, 74 Ala. 616; *Weems v. Weems*, 73 Ala. 462: *Collier v. Falk*, 66 Ala. 223; *Duckworth v. Duckworth*, 35 Ala. 70; Freem. Judg., § 486; Willard's Equity, 161; Story's Equity, vol. 2, §§ 887-8.    The burden of proof was on the complainant to show (1) that an error of law or of fact was committed in the Probate Court, (2) that he was injured by that error, and (3) that he was not guilty of negligence or other fault —*Cawthorn v. Jones*, 73 Ala. 84; *Tayloe v. Bush*, 75 Ala. 437; *Bowden v. Perdue*, 59 Ala. 412; *Dickie v. Dickie*, 80 Ala. 59.    The presumption arising from the face of the checks was weak, and was overcome by the evidence adduced.—2 Dan. Neg. Instruments, § 1646.  (3.) The legatees and devisees under the will were necessary parties to the bill.    They were parties to the settlement in the Probate Court, and are concluded by it; but the bill seeks a new settlement in the Chancery Court, and does not make them parties.    Can there be one settlement in the Probate Court, binding on some of the parties; and another settlement in the Chancery Court, not binding on them, but binding on other parties?  (4.) All the assignments of error are insisted on.

OVERALL & BESTOR, *contra*, cited *Childress v. Bennett*, 10 Ala. 752; *Hatchett v. Berney*, 65 Ala. 39; *Moore v. Lescuer*, 33 Ala. 237; *Mock v. Steele*, 34 Ala. 198; *Connoly v. Cheesborough*, 22 Ala. 166; *Wharton v. Thomason*, 78 Ala. 47; 1 Dan. Neg. Instr. §§ 533-4.

STONE, C. J.—John D. Ragland, a resident of Virginia, died April 2, 1872, in Mobile, Ala., leaving a considerable estate and debts in each State.    He left a will, which was probated and established in each jurisdiction.    The will disposed of the testator's entire estate, real and personal, and

[Hall v. Pegram.]

appointed R. G. Pegram, of Virginia, to be executor, who, in the year 1872, qualified, and took upon himself the trust. The will also vested in Pegram the title to all testator's real estate, and made him trustee thereof for the equal benefit of testator's only surviving heirs at law and devisees, his three daughters, all residents of Virginia. Both the executor, Pegram, and the three daughters have ever since continued to reside in Virginia.

During the same year—1872—Fred. Hall, a resident of Alabama, was, by the Probate Court of Mobile county, appointed administrator of the said Ragland's estate with the will annexed, and took upon himself the administration of said estate in Alabama. His administration was limited to personal assets in Alabama, the estate being solvent, and to the payment of Alabama debts; for the will vested the title of all the realty in Pegram as trustee.

On the 10th of March, 1874, Fred. Hall made a partial settlement of his administration, at which time there was ascertained to be in his hands ten thousand, one hundred dollars, in excess of all the disbursements he had made as administrator. In this settlement commissions were allowed to him on all receipts and disbursements up to that stage of the administration. He made no other partial settlement.

On the 28th day of August, 1886, Fred. Hall made a final settlement of his administration of said estate, and at such settlement nothing was found against him. On the contrary, it was ascertained and decreed, that his disbursements exceeded the assets he had received, by the sum of four thousand, two hundred and sixty dollars; and it was decreed that the estate owed him that sum. He thereupon resigned the administration, his resignation was accepted by the court, and an order made discharging him from the trust.

The present bill was filed in November, 1886, by Pegram, the executor, and prays to have corrected certain errors of law and fact, charged to have been committed in Hall's final settlement, to his own advantage, and to the prejudice of Ragland's estate. The equity of the bill depends on section 3837 of the Code of 1876, and its proper interpretation. The language of that section is as follows: "Where any error of law or fact has occurred in the settlement of any estate of a decedent, to the injury of any party, without any fault or neglect on his part, such party may correct such error by bill in chancery, within two years after the final settlement thereof." This statute is found, without change,

in each of the Codes of 1852, 1867, and 1876. A clause is
added to it in the Code of 1886, but it does not affect this
case.

In the earlier constructions of this statute, this court was
inclined to make it highly remedial and beneficial.—*Cowan
v. Jones*, 27 Ala. 317; *Morrow v. Allison*, 39 Ala. 70;
*Meadows v. Edwards*, 46 Ala. 354; *Monnin v. Beroujon*,
51 Ala. 196. But this rule soon gave way to stricter re-
quirements. In *Gamble v. Jordan*, 54 Ala. 432, a case
under the statute we are considering, the principle decided
is correctly expressed in the second head-note, as follows:
"When the jurisdiction of the Probate Court has attached,
its decree on final settlement of an administration can not
be vacated or annulled by a resort to equity, unless the com-
plainant shows some equitable ground of relief, whereby,
by reason of accident, mistake, or fraud, unmixed with fault
on his part, he was prevented from interposing the matters
relied on, before decree in the Probate Court." In the
same case it was said: "The jurisdiction of the court of
probate was called into exercise, when the administrator filed
his accounts and vouchers for a final settlement, and a day
was appointed for the settlement. . . . . . The decree
not being impeached for fraud, and no accident or mistake
intervening, preventing the appellees from presenting to the
court all the matters on which they now insist as ground for
relief, and all of which were involved in it, the decree is a
bar." And in some of the cases which support this propo-
sition, notice of the day set for settlement was given only
by publication; and this was held to include infants, for
whom guardians *ad litem* were appointed, as well as adults.
*Otis v. Dargin*, 53 Ala. 178; *Waring v. Lewis*, *Ib.* 615;
*Stabler v. Cook*, 57 Ala. 22; *Boswell v. Townsend*, 57 Ala.
308; *Jones v. Fellows*, 58 Ala. 343; *Bowden v. Perdue*,
59 Ala. 107; *Same v. Same*, *Ib.* 133; *Lowe v. Guice*, 69 Ala.
80; *Hatcher v. Dillard*, 70 Ala. 343; *Lyne v. Wann*,
72 Ala. 43; *Foxworth v. White*, *Ib.* 224; *Stoudenmire v.
DeBardelaben*, *Ib.* 300; *Waldrom v. Waldrom*, 76 Ala.
285; *Tutwiler v. Lane*, 82 Ala. 456; *Cawthorn v. Jones*,
73 Ala. 82; *Massey v. Modawell*, *Ib.* 421; *Vincent v. Mar-
tin*, 79 Ala. 540.

Under our decisions, cited above, my opinion is, that we
have in effect declared that the statute we are considering
has accomplished no result whatever. This I attempted to
show in *Bowden v. Perdue*, 59 Ala. 409. The interpreta-

[Hall v. Pegram.]

tion it has received at our hands gives to it the same scope and extent in correcting errors in judgments, as was done by the Chancery Court without the statute.—*French v. Garner*, 7 Por. 549; 1 Brick. Dig. 666, § 376; 3 *Ib.* 347, § 230; *Headley v. Bell*, 84 Ala. 346.

While, as shown in *Bowden v. Perdue*, I would prefer to give to the statute a more liberal, remedial interpretation, the construction has prevailed too long, and has been asserted too often, to justify a departure from it. We speak, of course, of the statute as it existed before it was amended by the Code of 1886, § 3536. To what extent that amendment will require changed interpretation, it is not our intention to intimate any opinion at this time.

We have, as our rulings show, given full effect to the statutory requirement, that any injury complained of, to be remediable under this statute, must have been suffered "without any fault or neglect" on the part of the party complaining. Yet there are cases in which relief has been granted. If the administrator has made misrepresentations, has misled or deceived his beneficiary, and thus thrown him off his guard, or has resorted to any artifice, by which he has intentionally averted scrutiny of his account, and has thus obtained an undue advantage in his settlement, chancery will grant relief, if timely application be made. Chancery relieves against the most solemn judgments, if procured by fraud.—*Humphreys v. Burleson*, 72 Ala. 1; *Mock v. Steele*, 34 Ala. 198; *U. S. v. Throckmorton*, 98 U. S. 61.

A summary of the facts of this case is necessary to a proper understanding of the question we have in hand.

During the season of 1871–2, the testator, Ragland, was engaged in purchasing horses and mules at Selma, and shipping them to Mobile by steamboat. Selma is near the center of the State, and Mobile on the southern border—distant, the one place from the other, a hundred and fifty miles, or more; more than double that number of miles by water. This is common knowledge. The correspondence of the parties, which is in evidence, shows that Ragland's purchases in Selma were with a view to a sale in Mobile; that Hall was his agent at the latter place, and that the horses and mules purchased at Selma were shipped to Hall. Ragland drew on Hall to meet the purchases he made, and, apparently, to meet some other liabilities. Ragland's drafts on Hall during the season aggregated twelve thousand dollars or more, all of which were paid by Hall.

34

[Hall v. Pegram.]

There was a correspondence between Pegram, the executor in Virginia, and Hall, the administrator in Alabama, commencing in 1872, and continuing up to a short time before Hall's final settlement in 1886. From that correspondence we derive the following information: Ragland's estate owed debts to Virginia creditors, in excess of personal assets subject to Pegram's primary control. Pegram, executing the domiciliary administration, and exercising its rights, claimed that there was an excess of personal assets in Alabama beyond the claims of Alabama creditors; and hence he desired that Hall should turn over to him some part of the Alabama personal assets, to meet the Virginia debts, that he, Pegram, might save from sale and sacrifice real estate in Virginia, which he alleged was very valuable. His requests and appeals in this behalf commenced in 1872, and were repeated in almost every letter, till near the close of the administration. As early as November 18, 1872, in a letter from Pegram to Hall, is this language: "Can you give me an idea when I may look for a remittance from you? You must not deem me importunate, for, if you had any idea of the extent to which I am annoyed by constant inquiries from creditors, you would acquit me of the charge of being unnecessarily troublesome to you." And in a letter from same to same, dated June 24, 1878, is the following language: "I would also like to know the present *status* of your administration upon Ragland's estate? Have you settled up, or are there still outstanding claims to be paid? and if so, have you the assets to meet them, or will some of the real estate have to be sold to pay debts?" If this letter was ever answered, it is not shown.

We copy the following extracts from letters written by Hall to Pegram at the several dates:

February 18th, 1873: "I had determined to forward the proceeds of the sale of the stock, together with all the money which I had received, until advised by Judges Jones and Dargan not to do so."

May 30, 1873: "I would very willingly remit you a portion, or all of the money which I now hold as administrator, in order to quiet the Virginia creditors; but, as I have said before, that I am obliged to retain it until the suits which are now pending will have been decided. There are two suits, one concerning a cotton claim for over five, and another for board for five thousand. I have compromised one for lawyer's fees for over five hundred dolls. You would be as-

tonished were you to see the amount claimed by lawyers for fees and costs of court. It seems that the estate of Ragland will be nearly bankrupt, if it has to pay all these claims. I have determined, if compelled to pay these claims, to get them reduced as much as possible. I will do every thing in my power to promote the interest of the children of Mr. Ragland, and will always act in accordance with advice of Judges Jones and Dargan in all matters relating thereto."

November 24, 1873: "I can not remit you any funds of the estate at present, as I can not tell what claims may be filed against the estate in the Probate Court before the time allowed by law expires, and the suits now pending against the estate are decided." (The eighteen months allowed for filing claims expired December 15, 1873.)

May 29, 1874. "I have, within a few days, with the advice of Judge Jones, compromised a claim of near four thousand dollars, by paying eighteen hundred dollars and the costs; and there was a verdict given against the estate in our City Court yesterday, for about six thousand dollars; and there are other suits pending, and the other claims against the estate for a large amount."

On the 13th day of December, 1873—two days before the expiration of the eighteen months allowed for filing claims— Hall, the administrator, filed a claim in his own favor, for over twelve thousand dollars. The claim was sworn to by him as being due, and was made up of the items of payment he had made during the season 1871–2 on Ragland's drafts, some written requests, and other alleged oral requests. None of these drafts or requests, or the letters which generally accompanied them, furnish any evidence that Ragland was obtaining a loan or accommodation from Hall. They were simply drafts and requests preferred and forwarded, indicating nothing of the state of accounts between them, save the legal implications which arise, when one man gives a draft on another, and that other accepts and pays it.—1 Dan. Neg. Instr., § 534.

It is positively testified by Pegram, that he never knew or heard of Hall's claims described above, until notified of it after it had been allowed in Hall's final settlement. And his testimony is equally explicit, that he had no knowledge or notice of the time set for the settlement. There is no testimony in conflict with his, and no attempt was made to prove that either Pegram or either of the distributees was present, or represented on the final settlement, or that either

of them had notice that an account current had been filed for final settlement, or when it would take place.

Other facts bearing on the question we are considering should be noticed. On the 2d February, 1874, Hall filed his account current and vouchers for a partial settlement. On the 14th of the same month he wrote Pegram as follows: "I have filed a petition in Probate Court for a partial settlement of my accounts as administrator of the estate, and a hearing will be had on the 4th March next." The hearing was not had on the 4th, but was continued to the 10th. The following is an extract from the decree rendered: "And it appearing to the court, from proper evidence, that due notice of the time and nature of this settlement has been given, by publication for three successive weeks in the *Mobile Daily Register*, a newspaper published in this county, and that a copy of said paper containing such notice has been sent by mail, postage paid, to Richard G. Pegram, trustee under the will, Annie W. Martin and —— Martin, her husband, Virginia J. McCaw and William McCaw, her husband, and Mary Flora Martin, addressed to them at their several post-offices, as set out in the petition filed with the accounts; and they being present and represented by William G. Jones, Esq., their attorney," &c.

At this partial settlement there was a balance found in the hands of the administrator of ten thousand one hundred dollars, over all disbursements, costs and commissions; and although his individual claim against the estate of over twelve thousand dollars had been filed in court near three months before, he did not then claim any credit therefor, nor bring it to the attention of the court.

The account current for final settlement was filed July 29, 1886, and the settlement was had August 28, next following. No letter was written to Pegram notifying him of this settlement, nor was any paper containing the notice of day set for trial sent to him, or to either of testator's daughters, his legatees. In fact, neither the executor, nor either of the legatees, is mentioned in any of the proceedings pertaining to this settlement.—Code of 1875, § 2509, subd. 3; Code of 1886, § 2135. The following is an extract from the decree rendered: "And it appearing to the satisfaction of the court, that heretofore, on the 29th day of July, A. D. 1886, the said Fred. Hall filed in this court his account, vouchers, evidences and statements for the final settlement of his administration of said estate; and that pursuant to

[Hall v. Pegram.]

the order of the judge of said court, then made, notice of such settlement was given to all persons interested, by the publication thereof in the *Mobile Register*, a daily newspaper published in said county, for three successive weeks; and that such notice contained the name of Fred. Hall, the administrator, the name of John D. Ragland, the deceased, the day appointed for the settlement, and the nature thereof, and that the same was to be, as proposed, a final settlement of Fred. Hall, administrator of said estate." The settlement was thereupon had, in the absence of any one representing the estate, and the said claim of over twelve thousand dollars was allowed to Hall as a credit.

The errors complained of, and which this bill seeks to eliminate from the credit side of the account, are the said claim in favor of Hall of over twelve thousand dollars, an item of five hundred dollars allowed the administrator, as so much paid an accountant for making out the account current, and certain commissions alleged to have been improperly allowed to him.

For appellant, defendant below, it is contended that Pegram and the beneficiaries are, under the circumstances of this case, chargeable with notice of Hall's claim, or, what is the same thing, with neglect in not finding it out. We will first address ourselves to the inquiry, to what extent the services of the attorney, William G. Jones, must be regarded as a factor in the solution of this question. It is shown that he had died before the final settlement was had.

Mr. Jones, in one of his letters, described himself as attorney for the estate, and the record tends strongly to confirm this. He advised Hall in reference to the administration, and rendered services to him pertaining to the estate. Hall, several times, paid him fees for services rendered the estate, and the payments were allowed as credits in his settlement. On the other hand, the record discloses that Mr. Jones represented Pegram and the legatees, in the partial settlement in 1874. Hall had separate counsel in the person of Mr. E. S. Dargan, whose advice he followed in all cases where the two administrations were, or appeared to be antagonized. Mr. Dargan also died before the final settlement was made. We feel authorized to say that Jones' retainer and services were in the interest of Ragland's estate, and of Hall, the administrator. If a case should arise, in which Hall's personal interest was in antagonism to the es-

tate, Jones' primary allegiance was due to the estate, to Pegram, the executor, and to the legatees.

Papers were offered by Hall, the defendant, purporting to be depositions of Mary A. Matthews and J. H. Matthews, her husband. These depositions appear to have been taken, subscribed and sworn to, May 28, 1875. No proceedings were then pending in the court, affecting Hall's claim against the estate. It was about one year and two and a half months after the partial settlement was made, and every step taken in the proceedings was marked by gross irregularity. We need not particularize the irregularities. The chancellor rightly suppressed these so-called depositions.

After this case was put at issue, Hall had J. H. Matthews examined as a witness for him. He then made an application for leave to re-examine him, on other subjects. This application was heard at chambers, many miles from Mobile, where the suit was pending. The chancellor granted the order conditionally; that is, he allowed the deposition to be taken provisionally, but reserved the right to suppress it when it should be offered. He did suppress it, and his ruling in that behalf is assigned as error. It has been too often decided to admit of further debate, that the right to re-examine a witness in chancery is discretionery, and can not be reviewed.—1 Dan. Ch. Pr. 952, and note; *Meyer v. Mitchell*, 77 Ala. 312; *McDonald v. Jacobs, Ib.* 524.

The correspondence of the witness Jones with Pegram gives evidence of painstaking interest in the welfare of the Ragland estate, and not only fails to show that he had notice of Hall's claim, but convinces us that, if he had had such notice, he would have informed Pegram of it. The testimony offered with a view of proving such notice, so far as legal and received, fails to convince us of the fact. A large portion of the testimony of Hall was illegal, and was rightly disallowed by the chancellor.—*Tisdale v. Maxwell*, 58 Ala. 40; *Killen v. Lide*, 65 Ala. 505; *Dismukes v. Tolson*, 67 Ala. 386; *Wood v. Brewer*, 73 Ala. 259; *Warten v. Strane*, 82 Ala. 311; *Miller v. Cannon*, 84 Ala. 59.

The tendency of the correspondence found in this record is to show that Hall was furnishing to Pegram the necessary information to keep him well advised of the progress of the administration, and that he was zealously solicitous for the welfare of the beneficiaries. He informed him of the presentation of the important claims against the estate, the litigation which grew out of them, their compromise and

settlement, save his own claim of twelve thousand, seven hundred and twenty dollars. Of this he maintained a profound silence for over twelve years after it was filed. When he made his settlement in 1874, he wrote Pegram of the time set for the settlement, furnished the name and post-office address of the several beneficiaries, and copies of the notice of settlement were mailed to each of them, postage paid: It is so recited in the record. On that settlement, the estate and legatees were represented by counsel, and Hall's claim was not brought forward. When he filed his account and vouchers for final settlement, the record shows only two names as being mentioned—his own as administrator, and that of Ragland, the decedent. If he furnished the names or residences of the legatees, the record fails to show it; and the recitals in the decree are strongly persuasive to show that they were neither mentioned, nor any attempt made to give them actual notice. They were not present at the settlement, nor was there any one representing either the estate, Pegram, or the legatees. At that settlement, for the first time, the Hall claim—twelve thousand, seven hundred and twenty dollars—was produced as a credit, and allowed.

We have thus presented and established the following facts:

That Hall expressed and manifested a desire to preserve Ragland's estate for the benefit of his legatees, and, to this end, was willing to turn over to Pegram, for the Virginia creditors, all the moneys that had come to his hands as administrator in Alabama, but for the fact that large claims had been presented, sued on, or he was notified of them; and that other claims might be presented before the eighteen months expired. He mentioned all claims of respectable size, except his own.

That before making his partial settlement, he gave personal notice to Pegram, the executor, and had notices mailed to the several legatees at their several post-offices.

That at the partial settlement the estate and legatees were represented by counsel, and he did not claim a credit for his large claim, nor even bring it forward.

That he made no attempt to give personal notice of his final settlement, either to Pegram, the executor, or to the legatees, but, so far as the record discloses, did not allude to them in his proceedings.

That in the final settlement, when the estate was not represented, he produced his claim, and had it allowed,

[Hall v. Pegram.]

without any evidence to overcome the intendment that it was groundless; and that up to this time, no one representing Ragland's estate had actual notice of the claim.

Whether it was intended or not, the facts remain, that Hall gave notice to Pegram of all the larger suits, and of all the larger claims presented, except his own; that he gave no notice of it; that he gave personal notice to Pegram and the legatees of the first, or partial settlement; and that he gave no personal notice of the last, or final settlement, when, with no one representing the estate, he, for the first time, asked and claimed credit for his own claim. His conduct would naturally mislead those having an interest in the estate, and lull them into less vigilance than would be otherwise exacted of them. It acquits them of fault or neglect, within the meaning of the statute.

Hall, in his letter to Pegram of Sept. 25, 1886, says: "I will certainly correct any errors which may be found in my account." This was after the final settlement. Opening the . settlement under this bill, did not preclude him from establishing his claim by sufficient proof. All we decide is, that to the extent complained of in the bill, complainant is entitled to a re-accounting.

The other item of credit disallowed by the chancellor is the sum of $500 paid Stoutz, the accountant. Looking at the items composing the account, it does not appear complicated or difficult. If there was confusion, it grew out of the loose or negligent manner in which the accounts and papers were kept by the administrator. To the extent labor was cast on the accountant by the carelessness of the administrator, he was entitled to no credit. But it is not every business man ·who is competent to prepare an account current, such as is shown in this case, for a settlement. Looking at the account, as it appears in the record, the allowance appears excessive. There should have been an allowance, commensurate with the service required on the hypothesis that the administrator, through his carelessness and inattention, had not rendered it more complicated, than it would have been if properly attended to.—*Smyley v. Reese,* 53 Ala. 89; *Teague v. Corbitt,* 57 Ala. 529; *Munden v. Bailey,* 70 Ala. 63; *Clark v. Knox, Ib.* 607; *Henderson v. Simmons,* 33 Ala. 291. This was a proper subject of reference to the register.

We have reserved the question of pleading for the last. Pegram's being the domiciliary administration, and Hall's

only auxiliary, it follows that any excess in Hall's hands over the demands on the Alabama administration was properly payable to Pegram.—*Childress v. Bennett*, 10 Ala. 751; *Eq. Life Asso. Soc. v. Vogel*, 76 Ala. 441; *Merrill v. Morrissett*, 76 Ala. 433. There is no omission of necessary parties in this case.

The bill in this record has exhibits, which are made parts of it. Among them are several letters of Hall to Pegram, giving and withholding the information as to the debts, which we have commented on above. It also contains as exhibits, the accounts current and decrees in each of the settlements, showing the difference in the manner of giving notice of the two settlements. These, taken in connection with the other averments of the bill, make a case for relief under the rules we have declared above.—*Minter v. Br. Bank*, 23 Ala. 762. The demurrer was rightly overruled.

The decree of the chancellor is in all respects affirmed, save in the single item of five hundred dollars paid the accountant, which the chancellor disallowed *in toto*. This court will make and enter the proper decree of reference.

Reversed and rendered.

STONE, C. J. [January 22d, 1889.] Since the decision of this cause on a former day of the term, the counsel in the case, in order to avoid the expense of another reference, but without prejudice to the judgment of this court awarding costs on the reversal, and without prejudice to any other rights which appellant may have in the premises, have filed their written admission that the value of Stoutz's services as accountant is four hundred dollars, and would be so found and reported by the register; and no exceptions being filed to the report, and it not appearing that the sum reported by the register is too large, save in the item of five hundred dollars allowed for the services of said Stoutz, it is ordered and decreed, on motion of counsel for appellee, that the report of the register be so corrected as to show that the sum due from Hall to Pegram is eight thousand, two hundred and forty-six 64–100 dollars ($8,246.64), to bear interest as per the decree of the chancellor and the report of the register; and for such corrected sum the report is confirmed; this in lieu of the sum of eight thousand, six hundred and forty-six 64–100 ($8,646.64) reported by the register. In all other respects, the decree of the chancellor is affirmed. The costs of appeal in this court, and in the court below, stand adjudged against the appellee. All other costs to be paid by appellant.