# Scheuer v. Berringer.

*Bill in Equity to correct Errors in a Partnership Settlement.*

1. *Relation of partners not fiduciary.*—Partners do not bear such a fiduciary relation to each other as to render a settlement between them of the partnership affairs less binding upon them than upon other persons who are *sui juris.*

2. *Bill in equity to correct errors in a partnership settlement; burden of proof.*—When, on a bill filed to open a settlement of a partnership, there is no fraud or imposition shown, but only errors and omissions, the errors and omissions complained of must be specifically and distinctly averred in the bill, and the burden rests upon the party complaining to establish them by satisfactory proof, which must correspond with the allegations of the bill.

3. *Same; what proof required.*—Where partnership accounts have been made out and settled after full deliberation, it requires clear and convincing proof of error, and that this error was unknown at the time of the settlement to the party complaining, to induce a court of equity to surcharge and falsify the account by reason of the alleged errors.

APPEAL from the Chancery Court of Barbour.
Heard before the Hon. JOHN A. FOSTER.

[Scheuer v. Berringer.]

The bill in this case was filed on April 3, 1890, by the appellee, M. M. Berringer, against the appellant, B. Scheuer, to correct certain mistakes, alleged to have occurred in a partnership settlement between the complainant and the respondent. The material facts' of the case are sufficiently stated in the opinion.

In the final decree of the chancellor, rendered October 4, 1892, he overruled the several exceptions of the respondent to the report of the register, and decreed that the respondent was indebted to the complainant, on the final settlement of the partnership accounts, in the sum of $386.81. The respondent prosecutes the present appeal, and assigns as error the final decree of the chancellor.

A. H. MERRILL and S. H. DENT, JR., for appellant, cited *Garrett v. Robinson*, 80 Ala. 192; *Wells v. Babcock*, 56 Mich. 276; 2 Bates on Partnership, §§ 782, 964.

H. D. CLAYTON, *contra*.

STONE, C. J.—In January, 1881, Berringer and Scheuer formed a mercantile partnership, which continued for nine years. Berringer had theretofore been in business, and Scheuer was serving him as an employé. With the exception of a small sum, Berringer furnished all the capital of the new firm, the agreement being that he should be paid interest for the capital so furnished. The business continued until January, 1890, and the result shows it was prosperously conducted. They dissolved, and came to a settlement and division of the assets. In making the settlement and division, they had the services of a skilled and experienced accountant, and the settlement appears to have been carefully agreed upon and made. Scheuer, having had chief control of the books, had more to do than Berringer had in furnishing the information on which the accounts were agreed upon, and the settlement made. It was agreed, however, that if any errors or mistakes were committed, they should be corrected.

Some two months after the settlement and division were completed, the present bill was filed by Berringer. It alleges that errors and mistakes were made in the settlement, and he points out and describes alleged er-

rors to his prejudice, amounting to a sum between two and three thousand dollars, which he prays to have corrected. The bill charges mistake, not fraud, in the perpetration of those errors, and that complainant called on Scheuer to correct them, but he refused to do so. The answer denied the errors charged, and, being made a cross-bill, charged graver errors and mistakes committed to the prejudice of Scheuer, and prayed to have them corrected.

The largest item of alleged error, of which Berringer makes complaint, relates to the value of merchandise turned into the new firm by him as capital, on which he was to be paid interest. This, according to his averments, was understated in the settlement, to an amount exceeding $800. Interest added would make it some $1400. The largest of Scheuer's asserted errors committed to his prejudice are, first, that in estimating the value of the stock of clothing, of which Berringer became the purchaser at an agreed discount of 20 per cent from cost prices, the discount was duplicated, resulting in his obtaining the goods at 20 per cent less than he agreed should be paid for them; and, in the second place, that he, Scheuer, had been charged throughout the entire nine years with interest on the capital stock put in by Berringer in excess of his share, notwithstanding for the last four years of the term more of his individual means were employed in the partnership dealings and operations than Berringer had therein.

If these disputed matters of account were before us for the first time, uninfluenced by a previous settlement agreed on between the parties, we might view some of the questions presented in a very different light from that in which they at present appear. But, upon what seems to have been a very careful taking of stock, and a deliberate accounting and settlement, aided by an expert book-keeper and accountant, the partners reached a conclusion as to the state of their assets and mutual accounts, and made a settlement based on that conclusion. And the record before us gives unmistakable evidence that each of the litigants, Berringer and Scheuer, was a well informed and sagacious business man. The questions noted above, which are the gravest of the matters at issue between them, can not be sup-

[Scheuer v. Berringer.]

posed to have escaped their attention in making this important settlement: important by reason of the large amount involved, and by other attendant circumstances, of which the record furnishes more than an intimation. It may be safely affirmed that the settlement was not characterized by any noticeable evidences of confiding trust, such as confidence and friendship sometimes engender. They dealt at arms length. So, when the question of the amount of capital originally put in by Berringer was made an initial or fundamental fact in the computation of mutual indebtedness, what reason have we for supposing it did, or could escape his vigilance? On the other hand, Scheuer did raise a question not on the length of time for which he was sought to be charged interest, but on the rate of interest he should pay. He can not be supposed to have been ignorant of, or inattentive to, the fact that he was being charged interest for the entire nine years, and that he was being allowed no countervailing interest on the excess of his share of the assets he had permitted to accumulate, and remain in the firm, after Berringer had drawn so heavily on his share. All these facts are clearly shown, and there is not a semblance of proof to weaken their force. May we not presume, is it not our duty to presume, the settlement was made and concluded in strict conformity with the stipulations on which the partnership was formed? No written articles of partnership were ever signed, and we are left to ascertain its terms from oral testimony and the conduct of the parties. The oral testimony is somewhat in conflict, and hence we are forced to look largely to the attendant circumstances. There is wisdom in the aphorism, "Conduct speaks louder than words."

It is a principle, alike of logic and of law, that when there is a disputed question of fact, the burden of proof is on him who asserts its existence. Statutes and public policy have made some changes in this rule, but this case does not fall within any of them. The settlement agreed on and made is presumed to be correct, and as to all errors and mistakes charged, if denied, the burden of proving them was on him who charged the error. And, made as this settlement is shown to have been made, it should require very full proof of error to overcome the presumption that the settlement was correctly made.

[Schener v. Berringer.]

Tested by the foregoing rules we are far from being satisfactorily convinced, either that the value of the capital stock put in by Berringer was understated, or that Berringer was allowed two discounts of 20 % from actual cost on the invoice of ready made clothing, of which he became the purchaser. We may go farther and affirm, that the proof is not sufficient to overcome the presumption of correctness in the settlement, farther than the court below made corrections.

The chancellor rendered two opinions in this case, in which he discusses the merits of the controversy very satisfactorily. We copy largely from them, and adopt them as our own. The first opinion was rendered August 28, 1892. We copy as follows:

"When parties who are *sui juris* make a final settlement between themselves, such settlement is as binding on them in many respects as a decree of a court. Such settlement may be opened for fraud, accident or mistake. In *Cowan v. Jones*, 27 Ala. 317, the court says: 'The rule is settled that where errors or mistakes only are shown, the account will not be opened as where fraud is shown ; but the party alleging error or mistake in the account, will be permitted to surcharge and falsify it.' Again it is said, that 'The distinction between opening and surcharging and falsifying is important; because when opened, the whole of it may be unravelled ; but when permision is given to surcharge and falsify it, the *onus* is on the party who alleges mistakes to prove them.' In the case of *Morrow v. Allison*, 39 Ala. 70, the settlement was opened because there was fraud in only one item of the account, but in the case in 27 Ala. the account was not opened, because no fraud was shown. In *Chambers v. Crook*, 42 Ala. 172, the judgment was opened because fraud was shown in one of the parties presenting and swearing to an item in an account, when it was manifest that the claim was unjust and illegal. In *Moses v. Noble*, 86 Ala. 407, Justice Clopton remarks: 'In the absence of allegation and proof of fraud or undue influence, which taints the entire account, the court will not open and unravel as if no account had been made. * * * When only errors or mistakes are made, alleged and proved, wrong charges which should be deducted, or omission of credit which should be allowed, the court will give the party com-

plaining permission to surcharge and falsify the account, and limits its authority to a correction of the errors or mistake.' In the case of *Hall v. Pegram*, 85 Ala. 528, there is a very satisfactory discussion of the circumstances under which a chancery court will open a decree or settlement for fraud, accident or mistake, and cites the authorities to sustain the conclusions of the court.

"In the celebrated case of *Paulling v. Creagh*, 54 Ala. 646, the law governing such transactions is fully and clearly stated. I quote from it two passages : 'When fraud or undue advantage distinctly appears, infecting the whole account, the settlement will be annulled *in toto*, and the parties remitted to an accounting, as if it had not been made ;' citing authorities. Again it is said : 'When no fraud or imposition is shown, only errors or omissions, the court confines itself to the correction of these ; and to these the *onus probandi* rests on the party complaining of them.' There seems to be some conflict as to whether fraud as to one or more items will taint the whole settlement, and open it all up. But the better opinion is that 'fraud will be sufficient to open the settlement entirely in such cases, as the fraud infects the whole account.'

"In this case it seems to be admitted that the settlement was made with the distinct agreement that it should be subject to correction of errors or mistakes. There does not seem to have been any fraud in the settlement, and the bill is filed simply to make these corrections under the agreement. In a bill to surcharge and falsify a settlement for error or mistake therein, it is imperative that the party complaining should have set out clearly in the bill and proven the errors and mistakes complained of. It will not do for him to state that there were errors, mistakes and omissions, and then to prove them on the hearing. They must be distinctly set out in the bill, and the proof must correspond with the allegations. No error, mistake or omission will be considered unless the same is clearly set out in the bill. * * *

"In *Desha & Sheppard v. Smith*, 20 Ala., the court says, using this language on page 752 : 'But when the accounts between partners have been made out and settled after full deliberation, they require much more stringent proof of their correctness ; * * and it requires clear and convincing proof of error, and further,

that this error was unknown to the party at the time of the settlement, to induce a court to open the account thus settled. All authorities agree that the burden of proof lies on him, who complains of errors in a stated account, and errors which he does not clearly establish can not be presumed.' The case quotes the language of Chief Justice Marshall : 'No practice could be more dangerous than that of opening accounts which the parties themselves have adjusted, supported by probable or doubtful testimony.' It would, therefore, seem that, contrary to section 964 of 2 Bates on Partnership, cited by counsel, a settlement between partners is governed by the same rules as settlements between other persons ; and that they do not occupy any such fiduciary relation to each other as to render a settlement between partners less binding upon them than upon other persons, who are *sui juris*, and between whom there does not exist any fiduciary relation. I am, therefore, of the opinion, that the register was correct in holding that the settlement made between the parties was final, subject to the correction of such errors and omissions and mistakes as may be pointed out to the court by testimony, or to the register on reference.

"It was a part of the partnership contract that each of the partners should have interest on the amount of capital which he put in the business. In the case of *Desha & Sheppard v. Smith*, 20 Ala. on page 747, the first head-note states : 'The law will not in the absence of an express stipulation between the parties, compel one partner to pay interest to his co-partners on the amount by which their capital exceeds his.' In this case, there was such an express stipulation ; or rather, there was a stipulation that the capital of each of the partners should bear interest. Under this stipulation, it would not be improper to allow Scheuer no interest on his capital, and to allow Berringer interest only on the sum put in by him after deducting the capital put in by Scheuer. It is well settled that one partner can not sue the other for his part of the fund, which has been withdrawn from the business by the latter."

The result of the decree rendered at this time was a re-reference of the account to the register.

On October 4, 1892, the corrected report of the register, with the exceptions filed to it, again came before

him. He confirmed the report and rendered a final decree. We quote :

"I do not see any reason to change the views which I have heretofore given in this case. The settlement made between the parties was, in my opinion, a final settlement made in accordance with the terms of the contract, and can not be disturbed or changed except for errors or mistakes specifically alleged and clearly proved by one or the other of the parties. Such error or mistake must be specifically charged and the burden of proving it lies upon the party complaining. The two most important mistakes or errors in the settlement, of which complaint is made, are the addition of the $156, added as a part of the capital put in by Mr. Berringer. This sum was put in soon after the partnership, and the circumstances show that the same should be held and treated as a portion of the capital put in by him. I think, also, that the error found and corrected as to the amount of capital put in by Mr. Berringer was correctly stated by the register in his report. There can be no mistake from the evidence that the contract of partnership provided that Berringer should receive interest on his capital until the final settlement. It is also a well settled principle of law that neither of the partners can be charged interest on any sums they may have withdrawn from the partnership assets. It may be true, that in many cases it would be a hardship for both these rules to be enforced at the same time ; but under the circumstances of this case, I do not think it inequitable and the parties on their voluntary settlement did not think so.

"The defendant complains that there was a mistake made in the valuation of the clothing upon the final settlement. The burden of proving this is distinctly cast upon him. It may be admitted that the proof is conflicting and irreconcilable. In that event, it was the duty of the register to find for the complainant. The books certainly show that 20 % was twice taken from the schedule price of the goods. Some of the witnesses explained this in one way, and some in another. The contract was that Berringer should take the goods at 20 % less than New York cost. The goods had been marked at cost prices 20 % above New York cost. When these goods were scheduled, some of the witnesses state that

they were scheduled at 20% above New York cost, or at the cost mark placed upon the goods, and that after being thus scheduled 20% was taken off, thereby reducing it to New York cost. Upon the settlement, another 20% was taken off from New York cost, which was the price at which Mr. Berringer had agreed to take them on the final settlement. One of the witnesses, Moses Scheuer, thinks that as the goods were scheduled 20% was taken off; but the other witnesses do not agree with him, and in fact it would be very remarkable if as each article was scheduled 20% should be taken from each. I think that this witness must have alluded to the fact, as testified to by other witnesses, that the 20% was taken off as shown by the book, and not otherwise; and it is impossible to conclude that the defendant should have allowed the 20% to be taken out three times from the marked cost price, when the contract was that it should be taken from such marked price only twice.''

The decree of the chancellor is affirmed.